## John McEvoy

*v.*

## Louisa Humphrey.

Intoxicating liquors—*damages recoverable for selling to a person in the habit of getting drunk.* In a suit by a wife against a grocery keeper, to recover damages for selling liquor to her husband, who was in the habit of getting intoxicated, it appeared that the wife had notified the defendant not to sell liquor to her husband, and that she sent $50 by her husband to buy a horse, and that the defendant, in disregard of such notice, sold him liquor upon which he became intoxicated, and that he was arrested and put in the calaboose, and that when he got out he had spent about $29. The jury gave a verdict of $200 against the defendant, upon which judgment was rendered: *Held,* that actual damages being shown to the extent of $29, the jury had the right to give exemplary damages, as the sale to the husband after notice was without excuse or palliation, and therefore the damages were not excessive.

Appeal from the Circuit Court of Macon county; the Hon. C. B. Smith, Judge, presiding.

This was an action, by Louisa Humphrey against John McEvoy, originally brought before a justice of the peace, and taken by appeal to the circuit court. On a trial in the latter court, the jury found for the plaintiff, and assessed her damages at $200, upon which the court rendered judgment. The opinion states the substance of the other material facts.

Mr. Thomas Lee, for the appellant.

Messrs. Odor & Eldridge, for the appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

Appellee brought an action against appellant, before a justice of the peace of Macon county, to recover damages for selling intoxicating liquors to her husband. It appears that she and her husband reside in the country, about three miles

from the city of Decatur, on ten acres of ground, and raise
vegetables for the city market; and it appears that the hus-
band is in the habit of getting drunk, and appellee notified
appellant not to sell her husband intoxicating drink. Appel-
lee, to a large extent, does the labor on the place, and seems
to be an industrious and hard-working woman. On the 9th
day of February, 1873, appellee gave her husband $50 with
which to purchase a horse. He went to town, placed $20 of
the amount in the hands of another person, with which to
buy a horse if he found an opportunity, and with the balance
of the money he went to appellant's saloon, got drunk, and
was arrested and placed in the calaboose, and when discharged,
he had but $1.10 left. Here was an actual damage proved
to the extent of this loss of appellee's money. Of this, there
would seem to be no question.

But appellant denies that he gave him the whisky or other
intoxicating drink with which he became intoxicated. On
the other hand, the husband of appellee testifies that he drank
whisky at appellant's several times on the afternoon of that
day, and from the evidence of others there can be no ques-
tion of his being there drunk; and it appears that the longer
he remained the drunker he became. From this, it is appar-
ent that he was continuing to drink as long as his drunken-
ness increased. Appellant had liquors there, and was selling
them on the occasion; and as it is not shown that he obtained
liquor at other places after he came there, the almost irresist-
ible conclusion is, that he obtained it of appellant. In this
the evidence of the husband of appellee is strongly corrob-
orated.

But it is urged that he was contradicted by a large number
of witnesses. A careful examination of the testimony, we
think, fails to show that he was. He testified that he pur-
chased liquor of both appellant and his son. The former admits
that he sold him liquor to treat others, but denies that he
drank; and appellant swears that he did not give Humphrey
liquor. This has the appearance of an evasion. He may not

have given him liquor, and yet have sold it to him. . His son testifies that he first saw Humphrey in the saloon about half-past seven o'clock in the evening, and that he treated several, and he, with his father, waited on them. He says he would not give Humphrey any liquor. It will be observed that he " would not give him anything to drink," but fails to state that he did not sell him anything to drink. He further says that he first saw Humphrey about half after seven o'clock, and the evidence shows he was then quite drunk. For anything he testified to, Humphrey may have drunk many times at the bar before that time, and the presumption is he had. It seems he was soon after arrested.

Other witnesses testified that they did not see him drink. Such evidence can be of but little weight, unless they had been constantly watching to see if he did drink. This they do not pretend they did. Then, we think the evidence preponderated in favor of the verdict, and it should not be disturbed.

The question as to the weight of evidence as to the impeachment of appellee was for the jury, and they have decided it, and we are satisfied with their finding.

It is also urged that the damages are excessive. We have seen that appellee sustained actual damage, and that being so, she could recover exemplary damages under the statute if warranted by the evidence. She testified that she notified appellant not to sell liquor to her husband, and appellant, in his testimony, did not deny the statement, and we must regard it as true. Being true, we think that fact of itself should enhance the damages. When notified, there can be no excuse or palliation, when the sale is made which tends to produce the drunkenness which occasions the damage. When a sale is thus made, it indicates a reckless disregard of law and the rights of others that merits punishment. The fate of the drunkard's wife and family is hard enough, without its being knowingly, if not intentionally, aggravated by continuing to brutalize and degrade him, and increase the shame,

misery and suffering of his family. No right-thinking person can sympathize with the dramseller because he is reasonably punished by exemplary damages, when he knowingly sells to the drunkard in opposition to the expressed wishes of the wife.

We perceive no error in this record for which the judgment should be reversed, and it is affirmed.

*Judgment affirmed.*