EMIL WERNER v. M. C. EDMISTON.

1. VERDICT, *Obtained by Addition and Division; Error.* Where, in order to determine the amount of the verdict, the jury agreed that each juror should name the amount for which he was willing to give a verdict, and that the sum of these amounts should be divided by twelve, and that the quotient should be returned as the verdict, and this agreement was carried into effect, and the result reached in no other way and without any subsequent consideration or assent of the several jurors, *held*, that a verdict so made up and returned was improper, and must be set aside.

2. NEW TRIAL; *Notice; Practice.* No notice is required to be given of a motion for a new trial, and on the hearing of such a motion the court may not refuse to hear an affidavit on the ground that it has not been filed before the motion is called for hearing. If the affidavit discloses unexpected testimony, the court may for good cause postpone the further hearing so as to give the opposing party time to produce counter testimony.

3. SECS. 9 AND 10 OF DRAMSHOP ACT, *Valid.* Sec. 16 of art. 2 of the constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title," does not invalidate or render unconstitutional §§ 9 and 10 of the dramshop act.

4. ———— It is no defense to an action brought under these sections, that the intoxication was caused partially by liquor sold by other parties; it is enough if the liquor sold by the defendant was the direct cause, either in whole or in part, of the intoxication.

*Error from Sedgwick District Court.*

ACTION brought by *M. C. Edmiston*, (widow of M. V. Edmiston,) against *Werner*, to recover damages under the provisions of §§ 9 and 10 of chapter 35 of the General Statutes. The petition (omitting the title) is as follows:

"The plaintiff, for a first cause of action against the defendant, says:

"That for more than ten years last past, and up to the time of the death of M. V. Edmiston, as hereinafter set out, she was his wife; that at the time of such death the said M. V. Edmiston and this plaintiff were the common parents of five children, aged respectively ten, eight, five and three years, and one six months old; that during all the time since said marriage, the plaintiff and her children were dependent upon the said M. V. Edmiston for support; that for a period of

about three years preceding the death of the said M. V. Edmiston, he was residing with his family in the city of Wichita, Sedgwick county, Kansas, and during all of said time was addicted to the use of intoxicating liquors, and was a person in the habit of becoming intoxicated; that during the said period of three years the said defendant, Emil Werner, was the keeper and owner of a saloon in the said city of Wichita, and engaged in the sale of intoxicating liquors at retail; that on or about the first day of May, 1876, and on or about the fifteenth day of September, 1878, the said plaintiff informed said Emil Werner that said M. V. Edmiston was a person in the habit of becoming intoxicated, and notified the defendant not to sell, barter or give the said M. V. Edmiston any intoxicating liquors; that the said defendant, Emil Werner, on or about the fifteenth day of September, 1878, well knowing all these facts and that the said M. V. Edmiston was a person in the habit of becoming intoxicated, sold, bartered and gave away to said M. V. Edmiston, and said M. V. Edmiston drank certain intoxicating liquor, whereby he became intoxicated, and at divers and sundry other times, both before and after said fifteenth day of September, 1878, and during the said months of October and November, 1878, the said M. V. Edmiston drank certain intoxicating liquors furnished him by said Emil Werner, and whereby he became greatly intoxicated, in consequence of which intoxication the said M. V. Edmiston became wholly unable to take charge of or to provide for himself for a long period of time — that is, for a period of nine weeks from the fifteenth day of November, 1878; that during all of said period of nine weeks last above mentioned, the plaintiff, M. C. Edmiston, took care of and provided for said M. V. Edmiston, for the period of sixty days; that the care and provisions thus furnished were reasonably worth the sum of three dollars per day, and for said period of sixty-three days the sum of one hundred and eighty-nine dollars; that in consequence of such intoxication the said plaintiff kept the said M. V. Edmiston for the period of sixty-three days, for which she is entitled to receive five dollars per day, and the full sum of three hundred and fifteen dollars.

"For a second cause of action, the plaintiff makes all the allegations and statements set out in her first cause of action herein a part of this her second cause of action, and says that during the year 1878, and up to the 8th day of January, 1879, the said M. V. Edmiston was the husband of said plaintiff, and the only means of support of said plaintiff and her said

family; that for more than two years prior to the 8th day of January, 1879, the said M. V. Edmiston was a person in the habit of becoming intoxicated — which fact was well known to the defendant, Emil Warner; that on the 15th day of September, 1878, and at divers other times during the months of September, October, and November, 1878, the defendant 'Emil Warner, well knowing that the said M. V. Edmiston was a person in the habit of becoming intoxicated, sold, gave away and bartered to said M. V. Edmiston certain intoxicating liquors at his saloon in the city of Wichita, Kansas, to be drank therein; that said M. V. Edmiston at all such times drank such intoxicating liquors, whereby he became greatly intoxicated; that on the 8th day of January, 1879, the said M. V. Edmiston died; that the death of the said M. V. Edmiston was the direct result of and caused by the intoxication of the said M. V. Edmiston occasioned by the liquors furnished and provided as aforesaid by the said Emil Werner; that by reason of the death of the said M. V. Edmiston, as above mentioned, the said plaintiff, M. C. Edmiston, was wholly deprived of her means of support and of the care, protection, companionship and society of her said husband, to her damage in the sum of three thousand dollars; that by reason of such intoxication and the death of her said husband the plaintiff has been greatly affected and troubled in body and mind, to her damage in the sum of three thousand dollars. Wherefore, the plaintiff demands judgment," etc.

Trial at the September Term, 1879, of the district court, and verdict for plaintiff for $2,600. New trial denied, and judgment for plaintiff. *Werner* brings the case here.

*H. G. Ruggles,* and *Sluss & Hatton,* for plaintiff in error.

*Stanley & Wall,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought under the 9th and 10th sections of the dramshop act, in which the defendant in error, plaintiff below, recovered a judgment of $2,600 against the plaintiff in error, for having caused the intoxication of her husband.

It appears from the affidavit of the bailiff, the only testi-

mony offered on the motion for a new trial, that he was present in the jury room during the deliberations of the jury, and that the amount of the verdict was ascertained and determined solely by adding the sums named by the respective jurors, and dividing the sum total by twelve. This was not done for purposes of consultation, but by distinct agreement that the result of these arithmetical processes should be the amount of the verdict, and it was immediately at the close of the calculation so written out and returned. This was error, and sufficient to compel a new trial. (*Bailey v. Beck*, 21 Kas. 465.) It is true the district court refused to permit the affidavit to be read upon the motion, but we think its ruling in this respect cannot be sustained. The following quotation from the case-made shows the ruling in respect to the affidavit, and the reasons therefor:

"The facts are, that the plaintiff objected to the reading of the same, on the ground that it was not filed with the motion for a new trial. The court ruled that as a matter of practice, the affidavit should be on file a reasonable time before the hearing of the motion for a new trial, to give opportunity for counter affidavits. The defendant insisting upon the court hearing the motion for a new trial at that time, the court refused to permit the affidavit to be read — it appearing that the plaintiff had no notice of the filing thereof until after the motion for a new trial was called up for decision."

Now when notice of a motion is required, the statute provides that if affidavits are to be used, the notice shall state that fact. (Code, § 534.) But even then, it is not required that the affidavits be filed, but simply that notice be given that they are to be used. As to this motion, however, no notice is required, and certain of the grounds for a new trial must be sustained by affidavit. (Code, § 309.) The fact that a motion is filed including those grounds, is notice to the opposite party that affidavits sustaining them will be offered. And a party making a motion is under no obligation to disclose the testimony he may have to offer on the hearing thereof, any more than a party before trial to disclose the testimony he expects to produce on the trial. Neither has the court

any power to require such a disclosure. The court may, either upon a trial or a motion, and upon each alike, if unexpected testimony be offered, for good reason postpone the further hearing to enable the opposing party to produce testimony in reply to that offered, but if the opposing party has no counter testimony, and can get none, he cannot prevent the introduction of that offered, simply on the ground that it was unexpected.

In the case at bar, if the facts stated in the affidavit were true, the defendant was entitled to a new trial; if they were not true, and the plaintiff could produce testimony to show their falsity, she should have made an application for time to produce such testimony, but she could not prevent the defendant from offering his testimony, simply because she did not know what he was going to offer.

As this error compels a reversal of the judgment, we might stop here; but some questions are raised which will have to be considered on the new trial, and we may as well dispose of them now. This will facilitate the proceedings on that trial. It is insisted that said §§ 9 and 10 are unconstitutional, because they contain matter foreign to that in the other sections of the act, and not expressed in the title to the act. The title of the act is, "To restrain dramshops and taverns, and to regulate the sale of intoxicating liquors." The other sections contain provisions as to licenses, penalties for sales without license, prohibitions of sales upon certain days and to certain persons. Sec. 9 provides that any one who causes the intoxication of another shall be compelled to pay for his care while so intoxicated; and § 10, that every person who is injured in his property or means of support by any intoxicated person, or in consequence of intoxication, may recover therefor of the person causing such intoxication.

Now it seems to us that these matters come fairly within the scope of the title. They name certain conditions upon which one may sell liquor. The act in substance says to a party that you must not sell without a license; that when licensed you must not sell on certain days or to certain persons; and

that if you sell, you will be held liable for the injury the liquor causes. Is not all this the regulation of the sale of intoxicating liquors? We think the district court properly overruled the objections of counsel in this respect.

Another question is, whether it must appear that the liquor sold by defendant was the sole cause of the intoxication. In other words, does the statute apply where it is shown that the intoxication was caused by two drinks of liquor, one sold by defendant and the other by another party? The language of the statute is, "shall cause the intoxication;" and the argument is, that unless the sale by defendant shall be the sole cause, if it is only a contributory cause, the statute does not apply. We do not agree with this view of the statute. Where the separate acts of two wrong-doers contribute to and jointly cause the wrong, each is responsible as though he were the sole wrong-doer. This is a universal law of torts, and applies in the case of the sale of liquor as in all other cases. Of course the act must stand in the line of direct causation. If a glass of liquor is sold to-day which simply awakens an appetite, which months thereafter causes the party to seek and drink liquor to excess, such sale cannot be said to be in the line of direct causation; but where the liquor sold is part of that which directly produces the intoxication, we suppose the sale is within the statute, although it appears that other parties sold liquor which also contributed to the intoxication. In other words, it is sufficient if it appears that the liquor sold was either solely or with liquor sold by other parties at or about the same time, the direct cause of the intoxication.

Where two glasses of liquor are sold by two different parties, and intoxication follows therefrom, no analysis can accurately apportion the cause between the two sales, and the statute holds each responsible for the result caused by the two separate sales. If it be said that this casts large risks on the sale of liquor, for a sale of one drink to a man perfectly sober may be followed by a second sale to the same party by another person, and so no man be safe against the wrongful acts of a second vendor, we reply that the statute invites no

man to engage in the business of selling liquor. It prescribes the conditions, and if they seem hard to any one, he may decline entering into the business. It cannot be disguised that the general judgment is, that the sale of liquor carries risks to society, and if as protection against such risks the lawmakers attach severe conditions to such sale, the courts have no alternative but to enforce such conditions. In Lawson's monograph on the "civil remedy for injuries arising from the sale or gift of intoxicating liquors," p. 20, it is said: "A seller of intoxicating liquors by which another is injured in person, property or means of support, is not released from liability, if a part of the liquors causing the intoxication was sold by others. He is liable if he contributed to the result." (*Woolheather v. Risley*, 38 Iowa, 486; *Fountain v. Draper*, 49 Ind. 441; *Hackett v. Smelsey*, 77 Ill. 109; *Emory v. Addis*, 6 Ch. Legal News, 336; *Stone v. Nickerson*, 5 Allen, 29; *Bodge v. Hughes*, 53 N. H. 616; *Boyd v. Watt*, 27 Ohio St. 259; *Roth v. Eppy*, 16 Am. L. Reg., N. S., 111.) See especially the case from 27 Ohio St.

We are aware that in many of the states having statutes similar to ours, the language used is, "have caused or contributed to the intoxication," or, "have caused the intoxication in whole or in part;" but while this may make the meaning of the legislature plainer, we think for the reasons indicated our statute must bear the construction we have placed upon it. Indeed, in some of the states referred to we find one section with language as quoted, and another with language as in ours.

Several other questions are presented and discussed by counsel for plaintiff in error in their briefs, (the defendant in error has filed no brief,) but we shall not pass upon them at present. They may not arise in the next trial.

The judgment will be reversed, and the case remanded with instructions to grant a new trial.

All the Justices concurring.