## Charles Jockers v. Mary Borgman.

1. ORIGINAL PETITION, *Defects of, Disregarded.* Where a motion is filed to require a petition to be more definite and certain on various grounds therein alleged, and some of the grounds are sustained and a new or substituted petition is thereafter filed by the plaintiff, which is not attacked by motion or otherwise, and to which an answer is filed and the issues settled, the defendant cannot insist as error upon the defects for indefiniteness and uncertainty in the original petition.

2. REPEAL OF STATUTE; *Right of Action, Preserved.* Where an action was brought under § 10, ch. 35, Comp. Laws of 1879, and the statute was repealed prior to trial by ch. 128, Laws of 1881, but said ch. 128 embraced in § 15 thereof all of the provisions of said § 10, ch. 35, *held* under subdivision 1 of § 1 ch. 104, Comp. Laws of 1879, § 15 of ch. 128 must be construed as a continuation of the provisions of said § 10, ch. 35, and that therefore the repeal of said ch. 35 did not destroy or affect the right of action existing under § 10, ch. 35.

3. ———— Section 16 of art. 2 of the constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title," does not invalidate or render unconstitutional § 15 of ch. 128, Laws of 1881.

4. CIVIL-DAMAGE STATUTE; *Competent Question.* In an action brought by the wife against a party under the civil-damage statute for causing the intoxication of her husband, a witness testified that the husband and he had taken several drinks together at the defendant's saloon, but he could not say the husband had taken drinks there within the last two and a half years. Thereupon the counsel of plaintiff asked, "What is your best recollection with regard to whether or not you have seen the husband drink at defendant's saloon within the last two and a half years before he went away?" *Held,* The question was competent, and that it did not seek to obtain of witness his opinion merely.

5. EXEMPLARY DAMAGES; *Competent Evidence.* In an action brought by the wife against a party under the civil-damage statute for causing her

husband to be intoxicated, as affecting the question of exemplary damages, it is competent to offer evidence that the sales or gifts of intoxicating liquors were made against the plaintiff's remonstrance, or after her notice not to sell, and proof of such remonstrance or notification may be given, although it was made more than two years prior to the commencement of the action.

6. HUSBAND — *Habitual Drunkard.* In such an action it is competent to offer evidence that the husband is an habitual drunkard, and the jury may consider this fact among others, if the wife has been injured in her means of support by the defendant in selling or giving to her husband intoxicating liquors.

7. INSTRUCTION, *Based Upon Sufficient Evidence.* Where, in such an action, evidence had been introduced tending to prove that the husband had no means of support for his family, excepting his own labor; that owing to his intoxication he had neglected his business and did not support his wife, as he ought to have done, and could have done if he had been sober, and that she had become an object of public charity, an instruction that the wife was entitled to recover for any actual damage to her means of support, caused in whole or in part by liquor sold to her husband by the defendant, causing his intoxication, was based upon sufficient evidence.

8. ACTION — *Act of Wife no Bar.* Where a wife voluntarily signed a petition for a person applying for a dramshop license, she did not thereby consent that the party obtaining the license under the petition should sell intoxicants unlawfully, or in violation of the statute; and such act on her part is no bar to an action brought by her against the dramshop keeper under the civil-damage statute, for causing the intoxication of her husband, nor is evidence of such act competent in mitigation.

9. INSTRUCTION, *Refusal of, not Error.* In such an action, where the husband is an habitual drunkard, and has been under the influence of liquor most of the time for two years before the action was commenced, the refusal of an instruction that "If the jury find from the evidence the defendant sold plaintiff's husband intoxicating liquors at a time when he was sober, and that at such times he did not become intoxicated, they should not consider such sales in determining the amount of plaintiff's recovery," is not error. It is enough, if the liquors sold by the defendant were the direct cause, either in whole or in part, of the intoxication.

10. EXEMPLARY DAMAGES, *Measure and Grounds of.* The civil-damage statute expressly authorizes the recovery of damages coëxtensive with the injury, and likewise exemplary damages. But exemplary damages are not to be allowed under the act, unless the conduct of the defendant is willful, wanton, reckless, malicious, oppressive, or otherwise deserving of condemnation beyond the mere actual damage. Evidence, how-

ever, that the defendant sold intoxicating liquors to a person who was in the habit of being intoxicated, after notice from the wife not to sell, and that he sold intoxicating liquors to such person while in a state of intoxication, are grounds of exemplary damages.

### *Error from Washington District Court.*

ACTION brought by *Mary Borgman* against *Charles Jockers*, under § 10, chapter 35, Compiled Laws of 1879. At the November Term, 1881, of the district court, the plaintiff recovered a judgment for $1,000 actual damages, and $400 exemplary damages, against the defendant for having caused the intoxication of her husband. Defendant brings the case to this court. The opinion contains a sufficient statement of the facts.

*Joseph G. Lowe, Charles Brown*, and *T. J. Humes*, for plaintiff in error; *John Martin*, of counsel.

*Everest & Waggener, J. W. Rector*, and *Webb & Martin*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought under the 10th section of the dramshop act, (ch. 35, Comp. Laws 1879,) in which the defendant in error (plaintiff below) recovered a judgment of $1,000 actual damages, and $400 exemplary damages against the plaintiff in error, for having caused the intoxication of her husband.

I. It is alleged the court erred in overruling the motion to make more specific and certain the allegations of the petition as to the second, third, fourth and sixth grounds therein. It appears from the record that the petition was filed on April 13, 1881. On the 14th day of May succeeding, plaintiff in error filed a motion containing six grounds, to make more specific and definite certain of the allegations of the petition. Upon the hearing, the court sustained the motion as to the first and fifth grounds. Thereupon defendant in error was allowed thirty days in which to amend the petition.

On the 5th day of September following, she filed an amended petition. To this amended petition the plaintiff in error filed his answer, without attacking it by motion or otherwise. As the amended petition was substituted for the first petition, he is in no condition now to insist upon any defects in the original one. He filed his answer to the amended petition, and to this answer a reply was filed, thus settling the issues in the case.

II. At the term at which the cause was tried, plaintiff in error moved the court for judgment in his favor upon the pleadings. This was overruled, and upon the trial he objected to the defendant in error offering any evidence, for the alleged reason that the amended petition did not state facts sufficient to constitute a cause of action. These rulings are now complained of. It is the theory of plaintiff in error that as the dramshop act had been repealed prior to the trial, such repeal destroyed any right of action that might have existed during the existence of the statute; and *Dillon v. Linder*, 36 Wis. 344, is referred to in support of this doctrine. This authority, when fully considered, is not in opposition to the ruling of the trial court. Subdivision 1 of §1, ch. 104, Comp. Laws 1879, reads:

"The repeal of a statute does not revive a statute previously repealed; nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed. The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment."

Section 10 of ch. 35, Comp. Laws 1879, under which this action was brought, was taken up bodily and transferred to ch. 128, Laws of 1881, which repealed said chapter 35, Comp. Laws 1879. Sec. 15 of ch. 128, Laws of 1881, is identical with §10, ch. 35, Comp. Laws 1879. Therefore the provisions of §15, ch. 128, Laws 1881, being the same as those of §10, ch. 35, Comp. Laws 1879, must be construed as a continuation of such provisions, and not as a new enactment.

(*City of Troy v. Rld. Co.*, 11 Kas. 519; see also *Gilleland v. Schuyler*, 9 Kas. 569.) Nor can it be said that § 15 is in conflict with § 16, art. 2 of the constitution. (*Werner v. Edmiston*, 24 Kas. 147.) It is urged that no right of action existed under the dramshop act of ch. 35, Comp. Laws 1879, upon the ground that the act was in violation of art. 2, § 17 of the constitution, because it did not have uniform operation throughout the state. This position is wholly untenable. There are no words limiting the operation of the dramshop act, and if the reasons urged by counsel were correct, and if any of the laws referred to were unconstitutional, it would be the prior act of ch. 31, Comp. Laws 1879, prohibiting the selling of intoxicating liquors in unorganized counties.

III. It is contended that the court below erred in permitting counsel to ask certain witnesses as to their best recollection whether or not they had seen John Borgman drink any liquors, or under the influence of liquor, at plaintiff in error's saloon within two years prior to April 13, 1881. The witnesses referred to are Jacob Berns, Andrew Oswald, and Matt. Oswald. The first witness answered that it was his best impression that he had not seen Borgman drink at the saloon within two and a half years before he went away, but probably had within three years, but could not say for certain; that he kept no record. The second witness answered that he had probably seen Borgman at plaintiff in error's saloon under the influence of liquor within two years before he went away. The third witness answered that he could not say, but presumed he had. Portions of the answers were not responsive to the questions, and if injurious to the plaintiff in error, would doubtless have been stricken out, if a motion had been made therefor. The questions themselves were proper, especially as the witnesses interrogated showed a disposition to evade answering to facts within their knowledge. Oral evidence is after all only the uttered or spoken statement of existing facts or past transactions, and the witness in making his statements under oath of a past event, relies wholly upon his memory or recollection. Therefore if he gives his best recollection of a

8—29 KAS.

past transaction or event, he testifies only to that of which he has knowledge or recollection. When asked to give his recollection, his opinion is not called for. An opinion is the judgment which the mind forms. The questions did not ask the witnesses their opinions, as counsel seemingly argue.

IV. Upon the trial, the defendant in error testified that in the spring of 1878, she found her husband at plaintiff in error's saloon, sitting in a chair, drunk, and that then she notified plaintiff in error that she wished he would not sell her husband any more liquor; that this was the only notifi-.cation. This evidence was objected to, as being incompetent, irrelevant, and immaterial. The objection is mainly based upon the fact that this notification was given more than two years prior to the commencement of this action. Certainly the calling of the attention of plaintiff in error to the drunken condition of the husband by the wife, and notifying him not to sell the husband any more liquor, were material facts to go before a jury upon the question of exemplary damages; and whether such notification was given during the two years before the commencement of the action, or a little earlier, is immaterial.

V. It is urged that the first instruction was erroneous and misleading. It is as follows:

"If from the evidence you believe that the plaintiff had been for the last ten years the wife of John Borgman; that for several years previous to the commencement of this suit he was habitually intoxicated; that within two years before the commencement of this action the defendant sold or gave to him intoxicating liquor, and thereby caused his intoxication in whole or in part; that by reason of said intoxication the said John Borgman was rendered incapable of performing and transacting his ordinary business; that the plaintiff was dependent upon him for support; that in consequence of said intoxication she has been injured in means of support, then you will return a verdict for the plaintiff for such damages as from the evidence you may believe she has sustained in consequence thereof."

This instruction is sustained by the provisions of said §10, ch. 35, Comp. Laws 1879, excepting that part directing the

jury to consider whether Borgman had been habitually in-
toxicated for several years previous to the commencement of
this action. (*Hayes v. Phelan*, 4 Hun, 732; *Jackson v. Brook-
ins*, 5 Hun, 535; *Bertholf v. O'Reilly*, 8 Hun, 18.) Under
the evidence we perceive no objection to the court directing
the jury to consider that fact. The habits of Borgman as an
habitual drinker for two years prior to the institution of this
action was a matter for the consideration of the jury, and if
the direction called the attention of the jury to a period prior
thereto, it could not have been prejudicial to the plaintiff in
error, because the court expressly limited his liability to the
intoxicating liquor sold or given to Borgman within two
years before the action was commenced, and also instructed
the jury not to consider any act of plaintiff in error estab-
lished by the evidence as having taken place prior to April
13, 1879.

VI. Great complaint is made of the eighth instruction
given by the court, mainly upon the ground that it informed
the jury that defendant in error was entitled to recover exem-
plary damages whether she had sustained actual damages or
not. This objection is without force, because the court in
one of its instructions expressly charged the jury that exem-
plary damages could not be recovered until the defendant in
error had established, by a preponderance of evidence, that
she had received actual damages to her means of support,
by reason of the intoxication of her husband, caused within
two years next preceding April 13, 1881, by the act of plain-
tiff in error. in selling, bartering or giving to her husband
intoxicating liquors. Therefore, as all the instructions are to
be taken and considered together, the eighth instruction is not
subject to the complaint against it.

VII. Complaint is also made of the direction to the jury,
"that direct loss of employment by the said John Borg-
man, in consequence of intoxication, the proceeds of which
would naturally, except for his intoxication, go to the support
of plaintiff, would be actual damages." Counsel say that this
instruction would be correct only when the defendant in error's

husband had not sufficient other employment, or means to support his wife, and this exception should have been stated; otherwise the correct rule for estimating actual damages is enlarged. Further, counsel say that there is no evidence tending to show that the husband lost any employment by reason of intoxication. In answer we reply, that it is apparent sufficient evidence was introduced upon which to base the instruction. Defendant in error testified among other things, that her husband left her on the 18th day of January, 1881; that for the two and a half years before he went away his habits were very bad; that he drank a great deal; that he was under the influence of liquor most of the time; that he neglected his business and did not support his family, which consisted of herself and seven children, as he ought to have done, and could have done if he had been sober; that she had to borrow flour and potatoes; that the groceries he provided were scanty; that she had worked very hard herself; that at times she suffered for clothing, and when she asked for things her husband would complain and "say that he did not have money;" that her husband was appointed census enumerator for Hanover township in Washington county for the year 1880; that he was turned off and Charles Morgan appointed in his place; and that he was so turned off, she supposed, on account of his drunkenness; that when her husband left her, he left the family in destitute circumstances; that the neighbors and the lodge helped them some, and that she had become an object of public charity. Gibson, a witness, testified that he had lived in Hanover for nine years; that he knew John Borgman; that the first time he came to take the census at his house he was too drunk; the next time, he took it; that he drank a great deal; that he did not take the census of the township; that Charles Morgan, of Little Blue, came and took the census of the township after Borgman failed. One Pratt, a witness, testified that he knew John Borgman; that he had some business with him, and when he went to get him to do the work he was too drunk; that he had collected money for him, and that he went back the next day

and got the money.   Spence, another witness, testified that he was acquainted with John Borgman's habits; that they were bad, and that he would call him an habitual drunkard; that he had done business for him; that he went three times to get him to draw up a deed; that the first time he was at home, up-stairs drunk; that the second time he told him he was not fit to do the work; but at the third time he got the deed..

Borgman was morally and legally bound to supply his wife with the necessaries and comforts of life, and if he had no other resource, it was his duty to contribute his labor and its proceeds to her support.   It is evident that his intoxication caused him to neglect his business, made him habitually indolent, and deprived him of employment.   As he had during the past few years no means of support except his own labor, and as his intoxication incapacitated him from labor and also caused him to lose employment, the wife was injured "in means of support," because any deprivation of her right or interest in the proceeds of his labor or his capacity to labor, was an injury to her in *her* means of support. (*Schneider v. Hosier,* 21 Ohio St. 98.)   The loss of her means of support in consequence of the intoxication of her husband was to her actual damages.   The injury to the means of support of a married woman, caused by the sale of intoxicating liquors to her husband, by which he acquires habits of intemperance and idleness, may vary greatly according to the age, condition and circumstances of herself and husband.   Therefore evidence in such cases that the husband was a sober, industrious man, providing for and supporting his family prior to the time when the defendant caused his intoxication by selling to him intoxicating liquors, and after such sales and in consequence thereof he became less industrious than he had been before; that such sales caused him to neglect his business or work, or squander his means to any extent, so as to decrease the means of support of his wife, is admissible, and the jury may be instructed to take these circumstances into consideration, on the question of damages. (*Dunlavey v. Watson,* 38 Iowa, 400.)

VIII. The court below refused to give instructions fourteen and fifteen asked for by plaintiff in error. Fourteen reads:

"That a fact admitted is the same as a fact conclusively proved; that in this case plaintiff admits that she signed voluntarily and of her own accord, divers and sundry petitions for defendant and several other persons to sell intoxicating liquors in Hanover, where she and her husband lived, and for the same time included in the pleadings and shown by the evidence in this case."

Instruction fifteen reads:

"That if the plaintiff contributed to the intoxication of her husband, either by drinking with or encouraging him to drink, or by providing means whereby he could and did obtain intoxicating liquor, that in that case she cannot recover."

These instructions were properly rejected. During the time the dramshop act was in force, the sale of intoxicating liquors by a party having a dramshop, tavern or grocery license, was lawful, and a person signing a petition or recommendation that the party applying for such a license was a fit person to keep the same, did not thereby consent that the party obtaining the license might sell intoxicating liquors contrary to the provisions of the act, or might injure others by selling, bartering or giving intoxicating liquors without being liable for damages. The most that can be said is, that the defendant in error assisted the plaintiff in error by her signature to obtain for him a license to sell liquors under the terms of the statute. But by signing his petition, she did not authorize him to barter, sell or give intoxicants to her husband or any other person in violation of the statute, nor by so acting did she consent that he might injure her in person or property, or means of support, by intoxicating her husband. (*Jackson v. Brookins*, supra.) The instruction about contributing to the intoxication of her husband by drinking with or encouraging him to drink, or by providing him means whereby he could obtain intoxicating liquors, was not supported by evidence, as defendant in error was not guilty of such conduct at any time within two years prior to the commencement of this action,

even if she was ever guilty.  · The time that plaintiff in error
testified the defendant drank beer at his house which her
husband bought, was, according to his testimony, about six
years before the trial.  The instruction was also erroneous,
because it declared that defendant in error could not recover
if she provided the means whereby he could and did obtain
liquor, without saying that she provided the means, "know-
ing it was to be used for that purpose."

IX. The eighteenth instruction, which was refused, is:

"The court instructs the jury that if they find from the
evidence the defendant sold the plaintiff's husband intoxicat-
ing liquor within two years prior to April 13, 1881, at a
time when he was sober, and that at such times plaintiff's
husband did not become intoxicated, they should not consider
such sales in determining the amount of plaintiff's recovery."

It has already been decided by this court, that it is no de-
fense to an action brought under § 10 of the dramshop act,
that the intoxication was caused partly by liquor sold by other
parties.  It is enough, if the liquor sold by the party com-
plained of was the direct cause, either in whole or in part, of
the intoxication. (*Werner v. Edmiston,* 24 Kas. 147.)  The
instruction prayed for would have enabled the jury to return
a verdict for plaintiff in error, although the intoxicating
liquor sold to Borgman was the direct cause of subsequent in-
toxication; because where two glasses of liquor are sold by
two different parties, and intoxication follows therefrom, no
analysis can correctly apportion the causes between the two
sales.  The statute holds each responsible for the result caused
by the two separate sales. (*Werner v. Edmiston,* supra.)  Borg-
man may have been sober at the times that plaintiff in error
made some of the sales, and at such times did not become in-
toxicated; but if upon another glass being sold by another
party, he did become intoxicated, in part from the liquor first
furnished, both parties are responsible for the result.  If
Borgman had taken one or more glasses of liquor at the sa-
loon of plaintiff in error, which did not at once intoxicate
him, and before its effect however had passed off, he obtained
other glasses of intoxicating liquor from other saloons,

which together with that previously drunk caused him to be intoxicated, then all the parties are guilty, because the liquor first sold was a direct cause, either in whole or in part, of such intoxication. Again, if half a dozen sales are made by half a dozen saloon keepers, on or about the same time to the same person, no inquiry is possible as to the particular glass of liquor which caused the intoxication, and the statute very properly holds each seller responsible for the result caused by the sales. If the instruction had read that the jury were not to consider any sales made to Borgman by plaintiff in error within the two years prior to April 13, 1881, which did not contribute in whole or in part to his intoxication, the instruction might have been pertinent to the issue.

Further, the evidence is very conclusive that during the two or three years before Borgman left his family, he was under the influence of liquor most of the time. One witness testified that "he drank badly for two and a half years before the trial;" another, that "he was drunk three-fourths of the time;" another, that "for two years prior to April 13, 1881, he was under the influence of intoxicating liquor more of the time than he was sober;" another testified that "when he was acting justice of the peace, upon a trial he was so drunk as to go to sleep while the attorney was arguing the case before him;" another, that he "drank a great deal, and that he had seen him drinking at all of the saloons in town." Considering therefore the habits of Borgman, a sale of intoxicating liquor to him at any time within two years prior to April 13, 1881, could scarcely be said not to have contributed in part to his intoxication; so in any view the instruction was not prejudicial.

X. Several instructions asked by plaintiff in error were given as requested, excepting the court eliminated therefrom the word "credible" before "evidence." This was not erroneous. The instructions were in an unusual form, and the word credible seems to have been inserted before evidence, to mystify rather than to instruct the jury. If the plaintiff in error had wished the jury to be directed "that they were the

exclusive judges of the facts from the testimony in the case, and of the credibility of the witnesses," such an instruction if asked would undoubtedly have been given.

Counsel dwell at length upon the question of exemplary damages. They contend that the doctrine of awarding such damages is wrong in principle. It is also insisted upon, that as § 6 of the dramshop act makes it a misdemeanor for one to sell liquors to a person in the habit of becoming intoxicated, after having received notice thereof, that therefore exemplary damages cannot be allowed, because the wrong done is an offense punishable by indictment or information, and if exemplary damages be awarded a party is punished twice for the same offense. The statute expressly authorizes the recovery of damages coëxtensive with the injury, and likewise exemplary damages. Therefore in sustaining exemplary damages in cases of this character, we are not engrafting upon the law. In sustaining such damages we are only executing the law as enacted. In answer to the claim that if exemplary damages are allowed, the wrong-doer is liable to be punished twice, we cite as decisive, *Wiley v. Keokuk,* 6 Kas. 94. See also *Titus v. Corkins,* 21 Kas. 722.

Counsel in commenting upon the decisions of this court awarding exemplary damages, contend that the question should be reconsidered. Where the statute expressly authorizes the recovery of exemplary damages, the authorities are with this court. In Indiana in an early case, the court held that where the sale was illegal, thus rendering the seller liable to a criminal prosecution, he could not be punished with vindictive damages in a civil action. (*Struble v. Nodwift,* 11 Ind. 65.) But it has been since held that the act of 1873 of that state has expressly abrogated this rule. (*Schafer v. Smith,* 4 C. L. J. 272.) In the latter case it was said: "While it is admitted that the general assembly of this state, in the enactment of the said twelfth section of the aforementioned act, intended to and did give a right of action to the person mentioned in said section, for the recovery, not only of actual damages, but also of exemplary damages, it is urged by appellant that the gen-

eral assembly is prohibited by our constitution from enacting such a law. In support of this position, appellant directs our attention to the fourteenth section of the first article of the constitution of this state, which provides that 'No person shall be put in jeopardy twice for the same offense.' But we fail to see the applicability of this provision of our state constitution to the section of the act now under consideration. We recognize the rule which ordinarily prevails, that where a given act is or may be 'the subject of a criminal prosecution, and also of a civil action for damages in favor of the party thereby injured, exemplary damages will not be allowed in such action.' This rule, however, like most of the rules of civil practice, is a proper subject of legislative action, and the general assembly may well provide in such a case as the case at bar, that the injured party may recover, not only actual damages, but also exemplary damages, and the courts of the state will be bound to carry out and enforce such provision. In considering this subject, appellant's counsel seem to confound the terms *fine* and *exemplary damages*, and to regard the one as the synonym of the other; but there is a marked and well-defined difference between the meaning of these terms. A fine is an amercement imposed upon a person for a past violation of law; but exemplary damages have reference rather to the future than the past conduct of the offender, and are not given as a compensation to the injured party, but as an admonition to the offender not to repeat the offense." (See also *Franklin v. Schermerhorn*, 8 Hun, 112; *Ganssly v. Perkins*, 30 Mich. 492; *Hackett v. Smelsley*, 77 Ill. 109; *Meidel v. Anthis*, 71 Ill. 241; *Schneider v. Hosier*, supra; *Brannon v. Silvernail*, 81 Ill. 434; *Corcoran v. Harran*, C. L. J., vol. 15, 29.) While the statute expressly authorizes the recovery of exemplary damages in cases like this, they are not to be awarded unless the conduct of a defendant is willful, wanton, reckless, malicious, oppressive, or otherwise deserving of condemnation beyond the mere actual damage. Hence the material question is, whether the evidence brings the plaintiff in error within the rule thus announced. We think

it does. The evidence shows that the sales complained of were made after the wife had found her husband sitting in a chair in the saloon of plaintiff in error, drunk, and had notified him at that time not to sell him any more liquor; that the husband during the two years prior to the commencement of this action was an habitual drunkard; that he lived only three blocks from the saloon of the plaintiff in error, and that his habits of intoxication must have been necessarily known to him. The evidence further shows that the husband often visited the saloon of plaintiff in error, and that he was on several occasions furnished with whisky and beer, and upon some occasions was given intoxicating liquors while in a state of intoxication. The plaintiff in error can have no excuse for his conduct, and his disregard of the law and the rights of the wife may well merit the award of exemplary damages. (*Hackett v. Smelsley*, 77 Ill. 109; *Kellerman v. Arnold*, 74 Ill. 532; *McEvoy v. Humphrey*, 77 Ill. 388; 44 Iowa, 670; 30 Mich. 492.)

It is not clear to our minds that the amount of exemplary damages recovered is excessive; and as the amount of such damages is left to the sound discretion of the jury, subject to be controlled by the court when the discretion is abused, and not finding such discretion abused, considering all the circumstances of this case, we cannot disturb the verdict.

Some minor matters are submitted in the briefs of counsel, but it is unnecessary to comment upon them. After an examination of the record, and a full consideration of all the questions submitted, we perceive no error prejudicial to the interests of the party complaining.

The judgment of the district court will therefore be affirmed.

All the Justices concurring.