FRANK DUREIN, *et al.*, v. ELLSWORTH PONTIOUS, *et al.*

1. PROHIBITORY LIQUOR LAW; *Section 15, Valid.* Section 16 of art. 2 of the constitution, which provides that "No bill shall contain more than one subject, which shall be clearly expressed in its title," does not invalidate or render unconstitutional §15 of chapter 128, Laws of 1881, commonly known as the prohibitory liquor law. (*Werner v. Edmiston*, 24 Kas. 147.)

2. CIVIL-DAMAGE LAW; *Misjoinder of Plaintiffs.* Under the provisions of said §15, an action cannot be maintained jointly by the infant children who have been injured in their means of support on account of the intoxication of their father, against the persons who sold, bartered or

23 — 34 KAS.

furnished the intoxicating liquor. In such a case, the statute gives every child the right to an action for the damages that he or she has sustained, but does not give the children any right to maintain a joint action.

3. ——— *Limitation of Action.* An action under said § 15 is purely statutory, and must be commenced within three years after the cause of action shall have accrued, as prescribed by subdivision 2 of § 18 of the code — the action being upon a liability created by statute, other than a forfeiture or penalty.

*Error from Shawnee District Court.*

ON January 30, 1884, the following amended petition was filed, omitting court and title:

"Come now said plaintiffs, Ellsworth, Walter and Kenneth Pontious, minors, by their sister and next friend, Emma Pontious, and for cause of action against said defendants, Oscar Straub, Joseph Kramer, Frank Durein, Conrad Kreipe, Lewis W. Head, William Zimmerman, Philip Zimmerman, Philip H. Moeser, Carl Jockheck, and F. Poppendick, say: That the plaintiffs are the children of Elias Pontious, and his wife, Anna Pontious, deceased; that the plaintiffs, Ellsworth Pontious, Walter Pontious, and Kenneth Pontious, are minors, of the ages of eighteen, twelve, and three years respectively; that plaintiffs, together with Anna Pontious, wife of Elias Pontious, constituted the family of said Elias Pontious; that for more than eight years last past Elias Pontious has been a citizen of the state of Kansas and resided with the family in the city of Topeka, in said county and state; that during all of said time Elias Pontious has been addicted to the use of intoxicating liquors in excess, and was possessed of an inordinate and uncontrollable appetite for strong and spirituous liquors, and in the habit of becoming intoxicated, and was and is an habitual drunkard; that plaintiffs have been during all their lives wholly dependent upon the earnings of their father, Elias Pontious, for their support and maintenance, and without any other means of support; that Elias Pontious is a contractor and builder, and also a competent and skillful mechanic, very popular as a workman, and as a superintendent and contractor among those who knew him, and when sober and free from the influence of intoxicating liquors, always industrious and attentive to business, and capable of earning large sums of money and furnishing his said children with ample and competent means of support; and that prior to the injuries

hereinafter alleged, said Elias Pontious did realize large sums of money from his employment as mechanic and contractor, and did provide his family with comfortable and necessary and competent maintenance and support, keeping plaintiffs and their mother well housed, clothed and fed, and supplying ample means of education to his said children; that when sober and free from the effect and influence of intoxicating liquors, Elias Pontious was always a kind and considerate husband and father, attentive to all the wants, comforts and education of his children, ready and willing to spend his earnings for their comfort and support; that when under the influence and effects of intoxicating liquors, said Elias Pontious was abusive of his family, destructive of his property, neglectful of his business, and wasteful and profligate of his earnings.

"During the time since the first day of May, 1881, said Elias Pontious has been constantly and continuously under the influence and effect of intoxicating liquors, and in a constant and continuous state of intoxication caused by intoxicating liquors sold, bartered or given to him by said defendants, and during all of said time wholly neglected to provide common means of support for plaintiffs, and spent and squandered all his earnings and means with defendants for intoxicating liquors, whereby plaintiffs were injured in their means of support in the sum of ten thousand dollars.

"Since the first day of May, 1881, defendants have been and each of defendants has been engaged in the business of selling, bartering and giving away intoxicating liquors in the city of Topeka, in Shawnee county, Kansas, and they and each of them did, at divers and many times since the first day of May, 1881, sell, barter and give intoxicating liquors to Elias Pontious, and thereby caused the continuous and constant intoxication of said Elias Pontious during said period of time, in consequence of which intoxication plaintiffs have been deprived of their means of support and of the parental love, admonition and protection, nurture and care of their father, Elias Pontious, whereby plaintiffs have been injured in their means of support in the sum of ten thousand dollars.

"At said times of selling, bartering and giving away said intoxicating liquors to Elias Pontious, defendants and each of them were notified and informed and well knew that Elias Pontious was an habitual drunkard, and when intoxicated a very vicious, abusive and dangerous man, and wholly neglectful of his duty to plaintiffs as their father and natural provider and protector, and that plaintiffs were dependent upon him

for support, and would be injured in their means of support by his said intoxication.

"During all of said time since the first day of May, 1881, Elias Pontious wholly neglected to provide for his family, and the plaintiff Ellsworth Pontious was compelled to give up his studies and quit school, and seek such employment as he could obtain to earn means to pay house rent and furnish food, clothing, fuel and other necessaries of life for himself, and mother, and younger brothers, and they were obliged to beg and to accept assistance and support from relations and others.

"All the support provided for said family, during said time, was provided by the meager earnings of said plaintiff, and the charity of friends. During all of said time, plaintiffs were in the condition of actual suffering and poverty and want from the lack of the common necessaries of life in consequence of the constant and continuous intoxication of Elias Pontious, caused by intoxicating liquors, sold, bartered and given away by defendants aforesaid. Said Anna Pontious, wife of said Elias Pontious, and mother of plaintiffs, was sick and confined to her bed almost all of said time until the 14th day of January, 1883, when she died. During said sickness, said Elias Pontious was constantly and continuously intoxicated, from intoxicating liquors sold, bartered and given to him by defendants, and wholly neglected and refused to provide competent medical attendance and treatment, or proper food, nursing and care for his wife, in consequence of which neglect she died.

"Since the death of their mother, plaintiffs have been wholly deprived of the nurture, care and protection and support of their father by reason of his intoxication so caused by defendants, and plaintiffs have been obliged to accept the charities and mercies of strangers and be deprived of their family relations with each other, and have been wholly abandoned by their father, and the family wholly broken up and scattered, whereby plaintiffs have been damaged in their means of support in the sum of ten thousand dollars.

"Wherefore, plaintiffs pray judgment against defendants in the sum of ten thousand dollars as and for damages actually sustained by plaintiffs in their means of support in consequence of the constant and continuous intoxication of Elias Pontious since May 1, 1881, caused by intoxicating liquor sold, bartered or given away to said Elias Pontious by defendants; and for exemplary damages, and for costs of suit, and all proper relief."

On February 8, 1884, the defendants Oscar Straub and Joseph Kramer, partners as Straub & Co., William Zimmerman, Philip Zimmerman, Lewis Head and Carl Jockheck filed the following demurrer to said amended petition, omitting court and title:

"1. The court has no jurisdiction of the persons of the above-named defendants, or of the subject of the action.

"2. The plaintiffs have not the legal capacity to sue.

"3. There is a defect of parties plaintiff.

"4. There is a defect of parties defendant.

"5. Several causes of action are improperly joined.

"6. The petition does not state facts sufficient to constitute a cause of action."

On the same day, Frank Durein and Conrad Kreipe separately filed a demurrer to the amended petition, setting forth the same grounds; and on the same day, F. Poppendick filed his demurrer to the amended petition, setting forth like grounds. On April 15, 1884, all the demurrers were overruled, and subsequently the defendants answered by way of a general denial. Oscar Straub, Joseph Kramer, William Zimmerman, Philip Zimmerman, Lewis W. Head and Carl Jockheck joined in one answer, with Waters & Ensminger as their attorneys. Frank Durein and Conrad Kreipe joined in another answer, with Hazen & Isenhart as their attorneys. F. Poppendick filed his separate answer, with Case & Moss as his attorneys. Trial was begun February 10, 1885, before the court with a jury. On February 14, 1885, the jury returned a verdict for plaintiffs, assessing their actual damages at $1,500, and exemplary damages at $600, aggregating $2,100. The jury also returned the following special findings of fact:

"1. How much money would Elias Pontious earn at his business per annum when not in the habit of using intoxicating liquors? A. Eight hundred and fifty dollars.

"2. How much money could Elias Pontious earn per annum after May 1st, 1881? A. One hundred dollars.

"3. Were the plaintiffs, Ellsworth Pontious, Walter Pontious and Kenneth Pontious, the minor children of Elias Pontious? A. They were.

"4. Had the said plaintiffs any property or means of support other than their father's labor?   A.  They had not.

"5. Was Elias Pontious in the habit of becoming intoxicated between the 1st of May, 1881, and the 5th of December, 1883?   A. He was.

"6. Did the defendants, Frank Durein, Conrad Kreipe, William Zimmerman, Philip Zimmerman and F. Poppendick, their servants, agents, clerks, or bar-tenders, sell or give away any intoxicating liquor to Mr. Pontious between May 1, 1881, and December 5, 1883, and if you answer yes, state which one of the defendants?   A. Yes.   Frank Durein, Conrad Kreipe, William Zimmerman, Philip Zimmerman, and F. Poppendick.

"7. Did the defendants or either of them keep open saloons for the sale of intoxicating liquors in the city of Topeka, between May 1, 1881, and December 5, 1883?   If you answer yes, state which of them?   A. All of them, as above.

"8. Do you find from the evidence that Elias Pontious was in the saloon of either of the defendants between May 1, 1881, and December 5, 1883?   If you do so find, which one of them?   A. Yes, all of them.

"9. What actual damages do you find for the plaintiffs and against the defendants, and if against either of them, which of them?   A. Fifteen hundred dollars; against all of them as above.

"10. What exemplary damages do you find in favor of the plaintiffs and against the defendants, and which of them? A. Six hundred dollars; against all of the above defendants."

The defendants made a motion for a new trial, which was overruled, and on February 27, 1885, judgment was rendered upon the verdict in favor of the plaintiffs and against the defendants for the full sum of $2,100, and all costs.   The defendants excepted to the rulings and judgment of the court, and bring the case here.

*Case & Moss, Waters, Chase & Ensminger*, and *Hazen & Isenhart*, for plaintiffs in error.

*H. C. Root*, for defendants in error; *J. W. Campbell*, of counsel.

The opinion of the court was delivered by

HORTON, C. J.: This was an action for damages for injury to the means of support of plaintiffs below—defendants in error—arising from the sale and gift of intoxicating liquors to their father, Elias Pontious, alleged to have been sold and given to him by defendants below—plaintiffs in error—between May 1, 1881, and December 5, 1883. At the trial a verdict was returned in favor of plaintiffs below for $1,500 as actual damages, and $600 as exemplary damages. Judgment was rendered thereon. To reverse this judgment, defendants bring the case to this court.

The action was brought under § 15, ch. 128, Laws of 1881, known as the prohibitory liquor law, which reads as follows:

"Every wife, child, parent, guardian, or employer, or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of intoxication, habitual or otherwise, of any person, such wife, child, parent or guardian shall have a right of action, in his or her own name, against any person who shall, by selling, bartering or giving intoxicating liquors, have caused the intoxication of such person, for all damages actually sustained, as well as for exemplary damages; and a married woman shall have the right to bring suits, prosecute and control the same, and the amount recovered, the same as if unmarried; and all damages recovered by a minor under this act shall be paid either to such minor, or to his or her parents, guardian, or next friend, as the court shall direct; and all suits for damages under this act shall be by civil action in any of the courts of this state having jurisdiction thereof."

It is first contended that said § 15 is unconstitutional, for the reason that the title of the act is not broad enough to cover it. The title of the act is, "An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes." This court has passed upon this question in the case of *Werner v. Edmiston*, 24 Kas. 147. That action was under § 10 of the act of 1868, entitled "An act to restrain dramshops and

taverns, and to regulate the sale of intoxicating liquors." Sec. 15 of the statute of 1881 was bodily transferred from the dramshop act of 1868. The prohibitory liquor law of 1881 not only provides for prohibition, but also for the regulation of the sale of intoxicating liquors. The title of the act of 1881 is as broad as the title of the act of 1868, so far as embracing therein the provisions of said § 15; and the case of *Werner v. Edmiston*, supra, is therefore controlling.

1. Prohibitory liquor law; § 15, valid.

It is next contended that there was a misjoinder of parties, and that several causes of action were improperly joined. This upon the ground that said § 15 gives a right of action to every wife, to every child, to every parent, to every guardian, to every employer, and to every other person who is injured in person or property, or means of support, by any intoxicated person or in consequence of intoxication; that as each parent, each child, and each guardian has a right of action independent of the other under the statute, the plaintiffs below had no right to join their separate causes of action into one action and to maintain that action jointly against the defendants. In *Palmer v. Waddell*, 22 Kas. 352, this court decided that—

"Where two or more persons have separate causes of action against the same defendant, arising from the obstruction of a natural water-course, and the injury of their lands and crops thereby, they cannot unite in the same petition to recover damages for such injuries, which are plainly distinct and unconnected." (Code, §§ 35, 37, 38.)

In *Tate v. Railroad Co.*, 10 Ind. 174, it was said that—

"Two or more persons having separate causes of action against the same defendant, though arising out of the same transaction, cannot unite; nor can several plaintiffs in one complaint demand several distinct matters of relief; nor can they enforce joint and separate demands against the same defendants."

Iowa has a statute making the seller of intoxicating liquors responsible for the injurious results of his sales, substantially the same as our own in its provisions and effect.

In *Huggins v. Kavanagh*, 52 Iowa, 369, which was an

action by the wife against a defendant for injuring her and her family by selling intoxicating liquors to her husband, the supreme court, referring to the statute of that state, used the following language:

"The statute gives a right of action to every child injured in its means of support, as well as to the wife. As each has a right of action, neither can recover for the damages sustained by the other; nor can the plaintiff's damages be increased because she has a large number of children, or diminished because she has none, for her right of action is based on the loss of means of her support, and not for the support of her children."

In *Sibila v. Bahney*, 34 Ohio St. 410, in an action under the civil-damage act of that state, similar to ours, the supreme court, in speaking of the rights of the wife, say:

"Her loss consisted principally in the injury to her means of future support. At the death of her husband she was left in comfortable circumstances. Each child, five in number, has, or had, a likely remedy for injury to its means of future support, resulting from the same acts of the defendant."

The Maine law of 1872 contains the following section:

"Every wife, child, parent, guardian, husband or other person who is injured in person, property, means of support or otherwise by any intoxicated person, or by reason of the intoxication of any person, has a right of action in his own name against anyone who, by selling or giving any intoxicating liquors, or otherwise, has caused or contributed to the intoxication of such person; and in such action the plaintiff may recover both actual and exemplary damages. The owner, lessee or person renting or leasing any building or premises, having knowledge that intoxicating liquors are sold therein, are liable severally or jointly with the person selling or giving intoxicating liquors as aforesaid. And in actions by a wife, husband, parent, or child, general reputation of such relationship is *prima facie* evidence thereof; and the amount recovered by a wife or child shall be her or his sole and separate property." (Sec. 4, ch. 63 — Rev. Stat. of Me. 1883, ch. 27, § 49, p. 311.)

In that state Patrick McGee and wife, being the parents of James McGee, brought their action against John McCann for selling two glasses of whisky to their son, by reason whereof

he became intoxicated, and, in trying to return home, fell upon the railroad track, where a passing train ran over him and cut off his left arm, rendering him unfit for manual labor, and thereby depriving his parents of their only means of support. Objection having been taken to the petition upon the ground that there was a misjoinder of plaintiffs, the court disposes of the matter as follows:

"The objection, we think, must prevail. The act of 1872, ch. 63, § 4, gives to every parent 'who shall be injured in person, property, means of support, or otherwise, by any intoxicated person, or by reason of the intoxication of any person, a right of action in his or her own name against any person or persons who shall . . . have caused or contributed to the intoxication of such person.' There is nothing in the statute which in any degree tends to change the ordinary principles of law as applicable to the maintenance of an action of this kind; hence, a joint action in the name of two can be maintained only when their joint interest is invaded, or where they are jointly interested in the damages to be recovered. This seems to be a universal rule, and the apparent exceptions are not real ones. . . . In the case at bar, the interest as well as the injury, is several. The damage complained of is not to property, but to support. The support of the one cannot be that of the other. The injury to the one, in this respect, cannot be a direct injury to that of the other, though in the case of husband and wife it may be an indirect injury, but one for which an action would not lie. Here, the plaintiffs do not declare as husband and wife, but as parents. As such, the injury to the one and the amount to be recovered might be very different from that of the other, for both the real and the exemplary damage might be very different. The language of the statute, so far from changing this principle of law, tends very decidedly to confirm it. 'Every parent' thus injured shall have a right of action 'in his or her own name,' and the amount recovered by the 'wife or child shall be his or her sole and separate property.' If the parents may join, just as well might the children, for, in the same sense, they all have community of interest." (*McGee v. McCann*, 69 Me. [1879] 84, 85.)

Our statute says:

"Every wife, child, parent, guardian, or employer, or other person, who shall be injured in person, property, or means of

support, by any intoxicated person, or in consequence of the
intoxication, . . . shall have a right of action in his or
her own name . . . for all damages actually sustained,
as well as for exemplary damages," etc.

Therefore the foregoing decision from Maine is very much
to the point, and declares what, in our opinion, is the law
applicable to the case before us as to the joinder
of plaintiffs. The alleged wrongs of the defend-
ants gave each of the plaintiffs a right to an action
for the damages he had sustained, but did not give them any
right to maintain a joint action. The case is one in which
separate actions should have been brought against the defend-
ants; that is, one in which separate actions should have been
brought by each of the plaintiffs. Our conclusion therefore
is, that there is a misjoinder appearing in the petition. (See
*Swenson v. Plow Co.*, 14 Kas. 387; *Hudson v. Comm'rs of
Atchison Co.*, 12 id. 140; *McGrath v. City of Newton*, 29 id.
364; *Bort v. Yaw*, 46 Iowa, 323; *Hinkle v. Davendorf*, 38 id.
355; *Bartges v. O'Neil*, 13 Ohio St. 72.)

*2. Civil-dam-
age law;
misjoinder
of plaintiffs.*

Counsel refer to *Roose v. Perkins*, 9 Neb. 304, and *Kerkow
v. Bauer*, 15 id. 150, as holding that minor children may join
in a case of this kind. An examination of these decisions
and the statute of Nebraska shows that the cases cited are not
applicable to actions brought under the statute of this state.
*Roose v. Perkins*, supra, was decided in 1879; *Kerkow v.
Bauer*, supra, in 1883. The statute in force in 1879 and
1883 in Nebraska, reads:

"The person so licensed shall pay all damages that the
community or individuals may sustain in consequence of such
traffic; he shall support all paupers, widows, and orphans,
and the expenses of all civil and criminal prosecutions growing
out of or justly attributable to his retail traffic in intoxicating
drinks," etc. (Laws of 1873, § 576, p. 853.)

The statute of that state further provides:

"It shall be lawful for any married woman, or other person
at her request, to institute and maintain in her own name a
suit on any such bond for all damages sustained by herself

and children on account of such traffic; and the money when collected shall be paid over for the use of herself and children." (Laws of 1873, § 577, p. 853.)

Whenever the legislature of this state enacts a statute that the persons constituting one family may join in an action for the loss of means of support against those who have furnished the intoxicating liquor to the husband and father, the persons constituting one family may unite in bringing their action for loss of support; but under the existing statute this cannot be done. We cannot say that the union of the plaintiffs in the prosecution of their actions may not have prejudiced the rights of the defendants.

This disposes of the case; and as the action cannot again be tried upon the pleadings as they now stand, owing to the misjoinder of the plaintiffs, we do not deem it advisable to pass 3. Limitation upon the other questions presented, with the single of action. exception that it seems necessary for us to say that the question of limitation of this class of cases was not intended to be decided in *Jockers v. Borgman*, 29 Kas. 109. This action, being upon a liability created by statute, other than a forfeiture or penalty, is controlled as to limitation by the provisions of subdivision 2 of §18 of the code.

The judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.