No. 23,724.

HELEN MAUD HARRIS, a Minor, by SARAH C. KEIHL, Her Next Friend, *Appellant,* v. FRANK HARDESTY, *Appellee.*

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Intoxicated Parent—Minor Injured in Means of Support—Civil Damage Statute Construed.* The civil-damage statute, giving to a child injured in means of support, in consequence of intoxication of its parent, a right of action against the person who caused the intoxication (Gen. Stat. 1915, § 5507), affords remedy against none but a person who, by "selling, bartering, or giving intoxicating liquors," caused the intoxication.

2. SAME. The giving of intoxicating liquor, referred to in the statute, means giving as a subterfuge or device to evade the provisions of the prohibitory law.

3. SAME—*Action for Civil Damages—Petition Fails to State Cause of Action.* The plaintiff is a minor. The petition alleged the defendant induced her mother to drink intoxicating liquor, procured, bought and furnished intoxicating liquor and gave it to her mother to drink, which liquor her mother did drink, to such an extent she became habitually intoxicated. As a consequence of such intoxication, the plaintiff was injured in means of support. *Held,* the petition failed to state a cause of action, under the civil-damage statute; and under the common law, the plaintiff was without remedy.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed May 6, 1922. Affirmed.

*Frank Doster, J. G. Waters, J. C. Waters,* and *J. E. Addington,* all of Topeka, for the appellant.

*C. A. Smart,* of Lawrence, and *A. E. Crane,* of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a minor for damages resulting from loss of support occasioned by drunkenness of her mother, caused by the defendant. A demurrer to the petition was sustained, and the plaintiff appeals.

The petition alleged the plaintiff's parents had separated, her father had gone from the state of Kansas, and she was dependent on her mother for support. The defendant induced her mother to drink intoxicating liquor, procured, bought and furnished intoxicating liquor and gave it to her mother to drink, which liquor her mother did drink, to such an extent she became habitually intoxicated. As a consequence of such intoxication, the plaintiff was injured in means of support. The petition contained allegations of malice on the part of the defendant, and of anguish, humiliation and disgrace on the part of the plaintiff, and prayed for both actual and punitive damages.

The remedy accorded by civil-damage laws was unknown to the common law and, without a statute, the plaintiff could not recover. Besides that, at common law an infant could not enforce parental obligation to support, and had no remedy against a third person for deprivation of parental support.

The statute under which the action was commenced reads as follows:

"Every wife, child, parent, guardian or employer, or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of intoxication, habitual or otherwise, of any person, such wife, child, parent or guardian shall have a right of action, in his or her own name, against any person who shall, by selling, bartering or giving intoxicating liquors, have caused the intoxication of such person, for all damages actually sustained, as well as for exemplary damages; and a married woman shall have the right to bring suits, prosecute and control the same, and the amount recovered, the same as if unmarried; and all damages recovered by a minor under this act shall be paid either to such minor, or to his or her parents, guardian, or next friend, as the court shall direct; and all suits for damages under this act shall be by civil action in any of the courts of this state having jurisdiction thereof." (Gen. Stat. 1915, § 5507.)

This section is part of the prohibitory law of 1881, and is a continuation of a section of the dramshop act of 1868. (*Jockers v. Borgman*, 29 Kan. 109.) The title of the dramshop act is as follows:

Harris v. Hardesty.

"An act to restrain dramshops and taverns, and to regulate the sale of intoxicating liquors." (Gen. Stat. 1868, ch. 35.)

The title of the prohibitory law of 1881 is as follows:

"AN ACT to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes." (Laws 1881, ch. 128.)

It was necessary, under the constitution, which requires a bill to contain but one subject, which shall be clearly expressed in the title (art. 2, § 16), that the civil-damage provision be germane to the declared purposes of the two statutes. In the case of *Werner v. Edmiston*, 24 Kan. 147, the court considered the relation of the civil-damage section to the dramshop act. The opinion reads:

"It is insisted that said sections 9 and 10 are unconstitutional, because they contain matter foreign to that in the other sections of the act, and not expressed in the title to the act. The title of the act is, 'To restrain dramshops and taverns, and to regulate the sale of intoxicating liquors.' The other sections contain provisions as to licenses, penalties for sales without license, prohibitions of sales upon certain days and to certain persons. Section 9 provides that any one who causes the intoxication of another shall be compelled to pay for his care while so intoxicated; and section 10, that every person who is injured in his property or means of support by any intoxicated person, or in consequence of intoxication, may recover therefor of the person causing such intoxication.

"Now it seems to us that these matters come fairly within the scope of the title. They name certain conditions upon which one may sell liquor. The act in substance says to a party that you must not sell without a license; that when licensed you must not sell on certain days or to certain persons; and that if you sell, you will be held liable for the injury the liquor causes. Is not all this the regulation of the sale of intoxicating liquors?" (p. 151.)

In the case of *Durein v. Pontious*, 34 Kan. 353, 8 Pac. 428, the court considered the relation of the civil-damage section to the prohibitory law of 1881. The opinion reads:

"It is first contended that said section 15 is unconstitutional, for the reason that the title of the act is not broad enough to cover it. The title of the act is, 'An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific, and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes.' This court has passed upon this question in the case of *Werner v. Edmiston*, 24 Kan. 147. That action was under section 10 of the act of 1868, entitled 'An act to restrain dramshops and taverns, and to regulate the sale of intoxicating liquors.' Section 15 of the statute of 1881 was bodily transferred from the dramshop act of 1868. The prohibitory liquor law of 1881 not only provides for prohibition, but also for the regulation of the sale of intoxicating liquors. The

title of the act of 1881 is as broad as the title of the act of 1868, so far as embracing therein the provisions of said section 15; and the case of *Werner v. Edmiston,* supra, is therefore controlling." (p. 359.)

Very soon after the enactment of the prohibitory law, the court had occasion to consider fully the relation of provisions of the act to its title. The law contained a section making it unlawful for any person to become intoxicated. In the case of *The State v. Barrett,* 27 Kan. 213, it was held the section was not within the scope of the title, and in the opinion it was said:

"All that it seems to have had in contemplation was the prohibition of the manufacture and sale of intoxicating liquors in certain cases, and the regulation of the manufacture and sale of intoxicating liquor in certain other cases. With regard to what should be done with the liquors, independently of their manufacture and sale, it was silent. The title to the act does not, in the slightest or most remote degree, refer to the use of the liquor in the abstract. So far as the title of the act is concerned, after the liquor has been manufactured and sold, any person in the lawful and *bona fide* possession of it may use it as he sees fit; he may drink it, or burn it, or give it away, or he may use it in any other manner or for any other purpose to which his inclinations may lead him. The title to the act is wholly silent with reference to these matters. When the liquor is manufactured and sold, if manufactured and sold and purchased in good faith and according to law, the title to the act has then spent its force; it has then no further room for operation; its mission is then ended. When the sale is completed, it can have no further application to any transaction. . . .

"Of course we know that the indirect and remote object of the title to the act, as well as of the act itself, is to prevent drunkenness, to prevent intoxication, and to prevent the use of intoxicating liquors as a beverage; and we shall construe both the title to the act and the act itself with reference to such object; but we cannot under such a title, consider drunkenness or intoxication or the use of intoxicating liquors, aside from the manufacture and sale of such intoxicating liquors, for they have no existence in the title to the act independent of the manufacture and sale of intoxicating liquors, and are indissolubly and inseparably connected with them. We cannot consider drunkenness, or intoxication, or the use of intoxicating liquors as a beverage, in the abstract, but can consider them only where they are incidents or concomitants to the manufacture and sale of intoxicating liquors. When construing a provision of the act affecting the manufacture or sale of intoxicating liquors, we shall keep in view the fact that the act was intended to prevent the use of intoxicating liquors as a beverage, and shall construe the provision accordingly, and try to give it that construction which will best promote its object; but if we find a provision in the act that has no relation to the manufacture or sale of intoxicating liquors (whether it has any relation to drunkenness or not, or to intoxication or not, or to the use of intoxicating liquors as a beverage or not), we must say that the provision is outside of the title to the act; that it is not included in the title, and that it is therefore unconstitutional and void." (pp. 219, 220.)

Harris v. Hardesty.

No statute has been enacted since 1881 which has placed the civil-damage section under broader title, and that section stands to-day as a remedy for nothing except injuries in consequence of intoxication caused by "selling, bartering, or giving intoxicating liquors." In the case of *Zibold v. Reneer*, 73 Kan. 312, 85 Pac. 290, the court said:

"It was known to the legislature, as it is to all other persons, that the use of intoxicating liquors ·as a beverage makes drunkards; that an intoxicated person is incapable of caring for himself, is always in danger of being injured, and is likely to inflict injury upon others, at the cost of his liberty—possibly his life; that he habitually neglects his business and family; that the harm resulting from the excessive use of intoxicating liquors always falls most pitilessly upon the dependents of the user, not infrequently pauperizing himself and family. The idea naturally suggested itself to the legislature that if the sellers of intoxicants were made liable to those who should sustain injury to person or property or means of support by an intoxicated person, or in consequence of intoxication, the hazard would be so great that fewer persons would engage in the business, and those who should engage in it would exercise more caution. The legislature, therefore, gave a cause of action and created a liability for these injuries where none existed at common law." (p. 317.)

The dramshop act contained the following provision:

"The giving away of intoxicating liquors, or other shifts or device to evade the provisions of this act, shall be deemed and held to be an unlawful selling within the provisions of this act." (Gen. Stat. 1868, ch. 35, § 11.)

This section was continued in the prohibitory law in the following form:

"The giving away of intoxicating liquor, or any shifts or device to evade the provisions of this act, shall be deemed an unlawful selling within the provisions of this act." (Laws 1881, ch. 128, § 17.)

In numerous sections of the prohibitory law other than the civil-damage section, giving intoxicating liquor was coupled with selling and bartering, and in due time it became necessary to reach a conclusion respecting the meaning of the words, give, giving away, giving, and gift. The conclusion was that section 17 was inserted in the law to circumvent the ingenuity of those who might seek to effect sales without transgressing the letter of the law. (*The State v. Nickerson*, 30 Kan. 545, 549, 2 Pac. 654.) In the case of *The State v. Standish*, 37 Kan. 643, 16 Pac. 66, the syllabus reads:

"A person in the lawful and *bona fide* possession of intoxicating liquor may use it as he sees fit; he may drink it himself or give it away, but he cannot by any shift or device in selling or giving away lawfully evade the provisions of the statute prohibiting the manufacture and sale of intoxicating liquors.

"A person cannot be convicted under section 16 of the prohibitory act of 1881 for keeping in his house, store, or in a wareroom thereof, intoxicating liquor for his own use, or for giving the same away, providing the giving away is done honestly and in good faith, and not as a shift or device to evade the provisions of said act." (¶¶ 1, 2.)

In the opinion it was said:

"The limitation is that a person in giving away intoxicating liquor shall not do so to evade the provisions of the prohibitory act; in other words, any shift or device adopted in selling or giving away such liquors, to evade the provisions of that act, is prohibited." (p. 647.)

In the opinion in the case of *The State v. Fulker*, 43 Kan. 237, 22 Pac. 1020, the court said:

"A person may purchase and bring liquor into the state for his own use without violating the statute; and one so lawfully obtaining possession of intoxicating liquor may use it as he sees fit, by drinking it himself or giving it to another, provided it is done in good faith, and not as a shift or device to evade the provisions of the prohibitory act." (p. 241.)

The result is that under the various provisions of the prohibitory law of 1881, including the civil-damage section, the giving of intoxicating liquor means giving as a subterfuge for sale. The petition discloses nothing but simple gifts of intoxicating liquor, not made by way of pretense to accomplish sales, and consequently the petition does not state a cause of action under the civil-damage statute.

The plaintiff contends the court should expand the meaning of the civil-damage statute, to bring it in harmony with the increased reprobation of intoxicating liquors disclosed by recent legislation. The contention is met by the fact that, while the legislature has dealt more and more severely with intoxicating liquors, it has not seen fit to change the civil-damage statute, although it has had under consideration the extension of civil liability. In 1915, two additional civil-damage acts were passed. One of them made owners of property where intoxicating liquors are sold liable for damages caused by intoxication, and the other made cities similarly liable. (Laws 1915, ch. 233, ch. 234.) The original civil-damage act, however, was not amended, and the court cannot amend it by now giving it an interpretation different from that which it has borne continuously for substantially forty years.

The plaintiff contends she should be allowed to recover for damages accruing since passage of the bone-dry law (Laws 1917, ch. 215), inasmuch as that statute makes it unlawful to give intoxicating liquors to another. The contention is met by the fact that the

Salmans ·v. Railway Co.

civil-damage law gives no cause of action for damages accruing from intoxication caused by gift of liquor, and the bone-dry law did not amend the civil-damage law.

The judgment of the district court is affirmed.