HARVEY H. ROSS AND ANOTHER v.
DELMAR ROSS AND ANOTHER.
RODNEY ALAN STIGNEY, A MINOR, BY GLORIA
STIGNEY STORLIE, HIS MOTHER AND NATURAL
GUARDIAN, AND ANOTHER v. JOEL OWEN
JOHNSON AND ANOTHER.

200 N. W. 2d 149.

July 14, 1972—Nos. 43262, 43330.

*Meagher, Geer, Markham & Anderson, R. M. Frisbee,* and
*O. C. Adamson II,* for appellant.
*Wallace C. Sieh,* for respondents Stigney and Storlie.
*William J. Nierengarten,* for respondents Ross.

OTIS, JUSTICE.

The question for decision is whether persons who are not in the business of selling intoxicating liquor are liable under the Civil Damage Act, Minn. St. 340.95, for furnishing liquor to a minor, proximately causing his death. We hold that defendants are liable and affirm.

The facts are undisputed. On July 13, 1967, defendant-appellant Delmar Ross and defendant Joel Owen Johnson [1] purchased liquor for Delmar's 19-year-old brother, Rodney Alan Ross, which, as the jury found, resulted in Rodney's becoming intoxicated. By special verdict, the jury also found that Rodney's intoxication proximately caused his death when the car he was driving left the road. These consolidated actions were brought on behalf of Rodney's infant son and by Rodney's parents. [2] The jury awarded damages in the sum of $4,680 for the son and $1,026.84 for the parents. In denying defendants' motion for judgment n. o. v., the trial court accompanied his order with a memorandum which recognized the case as one of first impression and thoroughly considered the authorities. Defendant Delmar Ross appeals from the judgment in each action.

Minn. St. 340.95, popularly known as the "Dramshop Act" or the "Civil Damage Act," has never been applied to permit recovery against a person not in the business of dispensing liquor. [3] Cases decided in appellate courts of Kansas, Michigan, and Illi-

---

[1] Defendant Joel Owen Johnson is in default and has not appealed.

[2] Although the negligence of a decedent is a defense in an ordinary wrongful death action, and one who voluntarily becomes intoxicated cannot recover for his own injury under the Dramshop Act, Heveron v. Village of Belgrade, 288 Minn. 395, 397, 181 N. W. 2d 692, 693 (1970); Sworski v. Colman, 204 Minn. 474, 477, 283 N. W. 778, 780 (1939), a spouse, child, or parent may recover for loss of support notwithstanding the injured party or decedent became voluntarily intoxicated. Benes v. Campion, 186 Minn. 578, 244 N. W. 72 (1932); Fest v. Olson, 138 Minn. 31, 163 N. W. 798 (1917); Annotation, 4 A. L. R. 3d 1332.

[3] The text of the act is contained in the appendix.

nois under similar statutes have denied recovery. Nevertheless, in searching for legislative intent, which is the only subject of our inquiry, we are persuaded that the purpose of the act was to impose liability on every violator, whether or not he was in the liquor business.

Defendant vigorously contends that the history of the act and its inclusion in our general statutes with laws governing the commercial sale of liquor are persuasive evidence of legislative intent to exempt the casual donor who, as a host dispensing hospitality or in other social situations, dispenses liquor illegally. The classic examples are private individuals who invite guests of all ages to wedding receptions and employers who act as hosts at company picnics. It is argued that it was never the intention of the legislature to impose liability on such persons, where the problem of policing against furnishing liquor to minors and persons already intoxicated is extremely difficult. However valid these arguments may be in assessing the wisdom of the act, the fact remains that the conditions under which the act was adopted indicate a clear intent that it apply to everyone who violates the liquor laws.

1. Apparently the earliest statute on the subject was adopted as L. 1858, c. LXXIV. That statute provided for a bond as a prerequisite to obtaining a liquor license and also provided (§ 5) that a licensee who violated the conditions of his bond would be "liable for all damages done by persons intoxicated by liquors obtained from them." [4] L. 1887, c. 6, included a condition in the bond (§ 1) that the licensee would not furnish liquor to a minor but deleted reference to liability for damages. The statute governing bonds for those in the liquor business in 1911, when the Civil Damage Act was adopted, was L. 1905, c. 246. It, too, provided as a condition of the bond that the licensee would not furnish liquor to minors and amended L. 1887, c. 6, by imposing this further liability:

[4] See appendix for the corresponding provision in our present bonding statute, § 340.12(d).

"* * * The amount specified in such bond is declared to be a penalty, the amount recoverable to be measured by the actual damages."

That statute was not, for some reason, incorporated in the Revised Laws of 1905, but reference was made to it in R. L. 1905, § 1524, dealing with liquor license bonds. The legislature of 1911 then proceeded to adopt four entirely separate statutes here pertinent: Chapter 83, which made it a gross misdemeanor to sell liquor to designated groups, including minors and intoxicated persons; [5] c. 290, making it a gross misdemeanor for any person to give intoxicating liquor to a minor and others to whom the sale would be illegal; [6] c. 369, making it a gross misdemeanor for any person to entice into a saloon minors or others to whom the sale of liquor is forbidden; and c. 175, the Civil Damage Act, now codified as Minn. St. 340.95.

Defendant's argument that the act was adopted as a part of the control of the sale of liquor by licensed vendors is not, in our opinion, supported by the evidence. It is true that the commissioners, whom we now designate as revisors, included the act in the chapter dealing with the control of intoxicating liquors in G. S. 1913. However, it appears at the end of that chapter and under a separate heading; G. S. 1913, c. 16, § 3200. It continues to be a part of the present chapter dealing with intoxicating liquor, but this is a logical and convenient place for the revisor to put it. Its location in c. 340 of our statutes does not, of course, reflect the intent of the 1911 legislature. When adopted in 1911, c. 175 contained this title:

*"An Act giving a right of action to certain persons, for injuries caused by any intoxicated person, or by the intoxication of any person, against any person causing the same in certain cases."*

It is a separate statute, making no reference whatever to prior

---

[5] See appendix: Minn. St. 340.73.

[6] See appendix: Minn. St. 340.79.

provisions of the laws regulating the sale of liquor. Had it been the intent of the legislature to confine its application to liquor vendors, it seems likely it would have been included as an amendment to the statute requiring a bond, as was done by L. 1905, c. 246, or as a section of the act initially providing for a bond, as was done by L. 1858, c. 74. The statute as adopted in 1911 created a cause of action against "any person" who illegally gave or sold liquor to another person causing intoxication which resulted in damage to the plaintiff. Because automobiles were a relatively new device, the problem of driving while intoxicated was, of course, not the devastating menace it is today. That fact lends weight to the likelihood the legislature envisioned only limited application of the Civil Damage Act to householders and social drinkers. That, however, is not a reason for our misapplying legislative intent 60 years later.

2. In finding legislative intent, it is of some significance that as far back as 1882 we construed the words "any person" in a way which did not restrict prosecutions for liquor violations to those in the business. In State v. McGinnis, 30 Minn. 48, 14 N. W. 256, we held that the statute making it illegal to sell to minors applied whether the vendor was in the liquor business or not. The statute there applied was the forerunner of Minn. St. 340.73, set forth in the appendix. Later, in State v. Stock, 169 Minn. 364, 211 N. W. 319 (1926), decided during the prohibition era, we held it was a crime to make a gift of liquor to a minor by the terms of what is now Minn. St. 340.79. The same concept was adopted in construing the Civil Damage Act in Sworski v. Coleman, 208 Minn. 43, 293 N. W. 297 (1940), where we imposed liability notwithstanding the claim that the liquor was a gift and not a sale.

The only Minnesota case which has dealt with an action under the Civil Damage Act against a defendant not in the liquor business was Dahlin v. Kron, 232 Minn. 312, 45 N. W. 2d 833 (1950). However, whether the act applied to those not in the liquor business was not discussed in our opinion. We held the evidence sup-

ported a finding that the driver to whom the liquor was furnished was not, in fact, intoxicated at the time of the accident.

There is nothing in our other cases inconsistent with holding this defendant liable. Hahn v. City of Ortonville, 238 Minn. 428, 433, 57 N. W. 2d 254, 259 (1953); Dahl v. Northwestern Nat. Bank, 265 Minn. 216, 121 N. W. 2d 321 (1963); Hempstead v. Minneapolis Sheraton Corp. 283 Minn. 1, 166 N. W. 2d 95 (1969); Heveron v. Village of Belgrade, 288 Minn. 395, 397, 181 N. W. 2d 692, 693 (1970). We have held that the Civil Damage Act is both penal and remedial, an inconsistency which we have recognized but resolved in favor of a liberal construction "to suppress the mischief and advance the remedy." (Italics omitted.) Hahn v. City of Ortonville, 238 Minn. 428, 436, 57 N. W. 2d 254, 261. Our decisions have imposed on licensed liquor vendors strict liability because—

"* * * such business or activity can best bear the loss occasioned by a violation of law regulating the business or activity, even though the violation was unintentional or did not involve any deviation from the standard of due care." Dahl v. Northwestern Nat. Bank, 265 Minn. 216, 220, 121 N. W. 2d 321, 324.

It may well be that the legislature in light of our present holding will amend the Civil Damage Act to permit one who is not in the liquor business to assert the defense of due care. This, however, is not our prerogative.

3. Of the three jurisdictions called to our attention which have denied recovery, only one, Michigan, has a statute such as ours. Harris v. Hardesty, 111 Kan. 291, 207 P. 188 (1922), construed a statute which imposed liability for causing intoxication by selling liquor even if the sale was legal. The same kind of statute was applied in Miller v. Owens-Illinois Glass Co. 48 Ill. App. 2d 412, 199 N. E. 2d 300, 8 A. L. R. 3d 1402 (1964). The Illinois case arose out of damages inflicted by an employee of the defendant corporation who became intoxicated at a company picnic. The Illinois statute does not restrict liability to *illegal*

sales. The Illinois Appellate Court found it was not the intention of the legislature to apply the act to social drinking provided by a friend or neighbor. To hold otherwise, the court said, would open the floodgates of litigation. If our statute also applied to every case for damage resulting from intoxication, whether the furnishing of liquor was legal or illegal, we might well find a different legislative intention also. The only cases of which we are aware construing a statute such as ours are LeGault v. Klebba, 7 Mich. App. 640, 152 N. W. 2d 712 (1967); and Behnke v. Pierson, 21 Mich. App. 219, 175 N. W. 2d 303 (1970). The Le-Gault case arose out of furnishing a guest liquor at a wedding reception, and the Behnke case stemmed from a company party where liquor was furnished an employee who was already intoxicated.

We have concluded that the circumstances surrounding the adoption of the Civil Damage Act in 1911 compel a finding that the legislature intended to create a new cause of action against every violator whether in the liquor business or not. It is significant that at that session the legislature seemed preoccupied with strengthening and tightening the liquor laws, using throughout the chapters previously discussed the words "any person" and making no mention anywhere of persons in the liquor business. Since the act applies only to illegal transactions, it is not unreasonable to assume that the legislature intended to include persons other than the licensed vendors. Where liquor is furnished in a purely social setting, ordinarily it may be expected that the donor will take some precautions to determine the age of the recipient or his state of intoxication. While the act applies to those invited to wedding receptions and company picnics as well as to other gatherings where supervision may be onerous, no reason occurs to us why those who furnish liquor to others, even on social occasions, should not be responsible for protecting innocent third persons from the potential dangers of indiscriminately furnish-

ing such hospitality.[7] In any event, it is not our duty to decide what the legislature would have intended had the act been adopted in 1971 rather than in 1911. Accordingly, we affirm.[8]

Affirmed.

### Appendix

Minn. St. 340.12(d) provides:

"That the licensee, will pay to the extent of the principal amount of such bond or policy, and damages for death or injury caused by or resulting from the violation of any provisions of law relating thereto, and in such cases recovery under this paragraph may be had from the surety on this bond or policy. The amount specified in such bond or policy is declared to be a penalty, the amount recoverable to be measured by the actual damages; provided, however, that in no case shall such surety be liable for any amount in excess of the penal amount of the bond or policy."

Minn. St. 340.73 provides:

"Subdivision 1. It shall be unlawful for any person, except a licensed pharmacist to sell, give, barter, furnish, deliver, or dispose of, in any manner, either directly or indirectly, any spirituous, vinous, malt, or fermented liquors in any quantity,

---

[7] In a case where the majority refused to impose liability on those furnishing liquor on a social occasion absent a statute, Mr. Chief Justice Hallows, in a well considered dissent, in which he was joined by Justices Wilkie and Heffernan, said (Garcia v. Hargrove, 46 Wis. 2d 724, 740, 176 N. W. 2d 566, 573): "* * * We are still our brothers keepers, and it would be a rare host at a social gathering who would knowingly give more liquor to an intoxicated friend when he knows his invitee must take care of himself on the highway and will potentially endanger other persons. Social justice and common sense require the social host to see within reason that his guests do not partake too much of his generosity."

[8] Subsequent to the release of this opinion, our attention was called to Williams v. Klemesrud, 197 N. W. 2d 614 (Iowa), decided May 11, 1972, in which the Iowa court reached exactly the same conclusion by remarkably similar reasoning.

for any purpose, whatever, to any minor person, or to any intoxicated person, or to any public prostitute.

"Subd. 2. It shall be unlawful for any person except a licensed pharmacist to sell, give, barter, furnish or dispose of, in any manner, either directly or indirectly, any spirituous, vinous, malt or fermented liquors in any quantity, for any purpose, whatever, to any spendthrift, habitual drunkard, or improvident person, within one year after written notice by any peace officer, parent, guardian, master, employer, relative, or by any person annoyed or injured by the intoxication of such spendthrift, habitual drunkard, or improvident person, forbidding the sale of liquor to any such spendthrift, habitual drunkard, or improvident person.

"Subd. 3. Whoever shall in any way procure liquor for the use of any person named in this section shall be deemed to have sold it to such person. Any person violating any of the provisions of this section is guilty of a gross misdemeanor."

Minn. St. 340.79 provides:

"Any person who shall give to, procure or purchase, intoxicating liquors for any minor person or other person to whom the sale of intoxicating liquors is by law forbidden, is guilty of a gross misdemeanor and, upon conviction, shall be punished in accordance with the laws of the state."

Minn. St. 340.95 provides:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; and all damages recovered by a minor under this section shall be paid either to such minor or to his parent, guardian, or next friend, as the court directs; and all suits for damages

under this section shall be by civil action in any court of this state having jurisdiction thereof."

ROGOSHESKE, JUSTICE (concurring specially).

While I am compelled to agree with the scope of application intended by the 1911 Legislature in enacting our Civil Damage Act, I cannot endorse the language of the opinion which might be read to imply that the strict liability we have held the statute imposes upon a commercial seller of liquor can, with equal justification, be imposed upon a social host even though he may or may not carry either the type of, or sufficient, liability insurance to protect against the risk of such liability.

Hopefully, everyone ought to share the view that we are our "brother's keeper," and that no social host worthy of another's visit to his home or to his party should be permitted to ignore his duty to exercise reasonable care for the sobriety of his guest because of the potential harm to innocent third parties which could result if he negligently permits his guest to become intoxicated.[1] However, it must be understood that this is not the peculiar nature of the liability imposed upon a liquor dealer, and now a social host, by our Civil Damage Act. As briefly alluded to in the opinion, it is "strict liability" without regard to fault in the sense that the dealer, and now the host, engaged in any intentional or negligent misconduct. Dahl v. Northwestern Nat. Bank, 265 Minn. 216, 220, 121 N. W. 2d 321, 324 (1963). As previously applied only to a commercial seller who makes a sale of liquor for consumption either on or off his premises, this means in plain language that if he sells or otherwise transfers liquor to a minor, causing his intoxication, or to one obviously intoxicated, and the intoxicated person injures a third party in his person,

---

[1] Mr. Chief Justice Hallows' dissent in Garcia v. Hargrove, 46 Wis. 2d 724, 176 N. W. 2d 566 (1970), quoted in the majority opinion, arose out of the Wisconsin court's refusal to impose common-law liability upon a commercial liquor dealer and has nothing whatsoever to do with the nature of the liability imposed by a statute similar to our Civil Damage Act.

property, or means of support, the seller is strictly liable for all damages resulting. It is no defense to the seller that he exercised every reasonable precaution to avoid making such illegal sale. Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. 2d 254 (1953). Nor is it a defense that the injured party was himself contributorily negligent. Kvanli v. Village of Watson, 272 Minn. 481, 139 N. W. 2d 275 (1965).

The reason why this construction of our statute has evolved is our recognition that its ultimate purpose is a dual one involving both penal and remedial objectives; penal in that it intends to suppress the mischief of illegal sales by a liquor dealer to the end that there will be self-policing against illegal sales by dealers, and remedial in that the statute assures recovery of damages by an innocent person from a commercial activity which can best bear the burden of loss by insuring against it as a cost of engaging in a hazardous business for profit. This evolution of the peculiar nature of our statute is the result of resolving numerous and difficult problems of its construction and application which have arisen since its enactment, and more particularly, during the past 15 years.[2]

However desirable it may appear to impose the same strict liability upon a social host as upon a commercial vendor, the consequences may mean jeopardy so far as at least the remedial purpose of our statute is concerned. The objective of advancing the remedy of recovery in future cases because the liquor industry can best bear the burden of loss is not present when recovery is sought from an uninsured private individual.

It thus seems to me that it is necessary to note that the result of our decision may be to effectively dull one edge of what has been a sharp two-edged tool fashioned by the legislature to protect the health, safety, and welfare of the public by carefully

---

[2] For a review of the problems confronting this court up to the fall of 1961, see Note, 46 Minn. L. Rev. 169. For a more recent review, see Hagglund & Arthur, *Dram Shop Law in Minnesota,* 28 Bench and Bar of Minn., Feb. 1972, p. 17.

controlling the commercial sale or transfer of liquor to minors or intoxicated persons. Inevitably, attempts will now be made to amend the statute, or our construction of it, and to inject into it the element of fault or proof of negligence. I offer these observations in aid of those who will seek to improve the statute and its application. In this developing area of law, where we have not yet been directly confronted with whether or not nonstatutory common-law liability based on negligence should be imposed on private individuals, and indeed on commercial vendors,[3] it is important to keep clearly in mind the host of public policy considerations which must be weighed in resolving the threshold issue of whether such a remedy should be in addition to or a substitute for the liability imposed by our Civil Damage Act.

MR. JUSTICE TODD and MR. JUSTICE MACLAUGHLIN, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[3] See, Note, 49 Minn. L. Rev. 1154; Hagglund & Arthur, *Dram Shop Law in Minnesota*, 28 Bench and Bar of Minn., Feb. 1972, p. 17.