Manning, Appellant, v. Andy.

238

Argued March 16, 1972.  Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Sanford S. Finder,* for appellant.

*Samuel L. Rodgers,* with him *Rodgers and Roney,* for appellees.

OPINION PER CURIAM, October 10, 1973:

Clair Manning has appealed from an order of the trial court dismissing his complaint in trespass for failure to state a cause of action in negligence.  The dismissal occurred following preliminary objections by appellees, John Andy and Frank Andy, individually and trading as J & F Rubber Company and Andy's Tire Service.  On appeal the Superior Court sustained the trial court by a per curiam order. We granted allocatur.

The complaint alleged that appellant sustained injuries in an automobile accident caused by Russell E. Walters, who was under the influence of liquor.  Appellant was a passenger in Walters' vehicle when the acci-

dent occurred. Both appellant and Walters were employees of appellees, who had earlier held a party for their employees. Appellant further alleged that: "At said party the [appellees] did furnish or supply intoxicating liquors or beverages which were consumed by the said Russell E. Walters as well as [the appellant], and did continue to furnish intoxicating liquors or beverages to the said Russell E. Walters when he was in a state of visible intoxication."

In dismissing the complaint, the trial court held that no cause of action was stated under any theory and specifically held that §493(1) of the Liquor Code, Act of April 12, 1951, P. L. 90, Art. IV, §493(1), as amended, 47 P.S. 4-493(1), which defines certain unlawful conduct, does not impose civil liability upon appellees.[1] Section 493(1) of the Liquor Code does impose criminal liability for certain unlawful conduct and reads as follows: "It shall be unlawful . . . for any licensee or the board, or any employe, servant or agent of such licensee or the board, or any other person, to sell, furnish or give any liquor . . . or to permit any liquor . . . to be sold, furnished or given, to any person visibly intoxicated. . . ."

We find no error in the trial court's dismissal of appellant's complaint. Only licensed persons engaged in the *sale* of intoxicants have been held to be civilly liable to injured parties. *Jardine v. Upper Darby Lodge No. 1973,* 413 Pa. 626, 198 A. 2d 550 (1964). Appellant asks us to impose civil liability on nonlicensed persons like appellees, who furnish intoxicants for no remuneration. We decline to do so. While appellant's proposal may have merit, we feel that a decision of this monumental nature is best left to the legislature.

Order affirmed.

---

[1] Although appellant took advantage of an opportunity to amend his complaint, the demurrer was sustained to the amended complaint as well.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the result reached by the Court, but since my views do not coincide completely with those of the majority, I deem it desirable to set them forth briefly.

Were the defendant appellee in this case a licensee under the Liquor Code and had he sold the drinks rather than given them away to a person visibly intoxicated, there is little doubt that we would conclude that a cause of action had been stated; such conduct, in clear violation of the provisions of Section 493 of the Liquor Code,[1] would be considered negligence *per se* in a civil suit, even though the statute is penal in nature. Our cases make this plain. See *Majors v. Brodhead Hotel*, 416 Pa. 265, 268, 205 A. 2d 873, 875, 876 (1965) ; *Jardine v. Upper Darby Lodge No. 1973*, 413 Pa. 626, 632, 198 A. 2d 550, 553 (1964) ; *Smith v. Clark*, 411 Pa. 142, 144-45, 190 A. 2d 441, 442 (1963) ; *Schelin v. Goldberg*, 188 Pa. Superior Ct. 341, 347, 146 A. 2d 648, 651-52 (1958).

The defendant, however, is not a licensee but a private person who played host at a party. The question, therefore, is whether such a person is subject to the interdiction of Section 493, either for purposes of criminal responsibility under the Liquor Code or in a civil suit for damages. More specifically, do the words "any other person" in that section refer to everyone in the Commonwealth or only to persons who, although not licensees or their employees or agents, are nevertheless persons in the liquor trade? The question has never been previously decided by this Court, although the Superior Court has held that the statute does attach *criminal* responsibility to the forbidden conduct even though the defendant was not connected with the liquor busi-

---

[1] The section in relevant part provides: "It shall be unlawful ... for any licensee or the board, or any employe, servant or agent of such licensee or the board, or any other person, to sell, furnish or give any liquor . . . or to permit any liquor . . . to be sold, furnished or given, to any person visibly intoxicated . . . ."

ness. *Commonwealth v. Randall*, 183 Pa. Superior Ct. 603, 133 A. 2d 276 (1957).[2] One need not quarrel with the *Randall* decision on its facts (the conduct there involved also included corrupting the morals of minors) to conclude that it need not be held applicable in a *civil* suit.

The Liquor Code is primarily concerned with the regulation of licensees of the Liquor Control Board and others connected in one way or another with the liquor industry.[3] In my view it is appropriate to hold persons in that class strictly liable in tort law for a violation of the statute, as this Court has done in the cases cited above. See *Restatement (Second) of Torts*, §286 (1965). That standard of liability, however, is obviously not appropriate for every violation of a criminal statute,[4] and in my view it is not appropriate where,

---

[2] We denied allocatur, 184 Pa. Superior Ct. XXVIII, and the United States Supreme Court denied certiorari, 355 U.S. 954 (1958).

[3] The title of the Liquor Code, Act of April 12, 1951, P. L. 90, 47 P.S. §1-101 is in relevant part as follows: "An Act relating to alcoholic liquors, alcohol and malt and brewed beverages; . . . regulating and restricting the manufacture, purchase, sale, possession, consumption, importation, transportation, furnishing, holding in bond, holding in storage, traffic in and use of alcoholic liquors, alcohol, and malt and brewed beverages *and the persons engaged or employed therein*; . . . ." (emphasis supplied)

The purpose of the Code "is to prohibit the manufacture of and transactions in liquor, alcohol and malt or brewed beverages which take place in this Commonwealth, except by and under the control of the [Liquor Control Board] as herein specifically provided, and every section and provision of the act shall be construed accordingly . . . ." 47 P.S. §1-104.

The provisions of the Code which specify the proscribed conduct and impose criminal liability, Sections 4-491 to 4-497, inclusive, are concerned with the actions of licensees, manufacturers, importers, etc.

[4] See generally *Restatement (Second) of Torts*, §288 (1965); Morris, *The Role of Criminal Statutes in Negligence Actions*, 49 Colum. L. Rev. 21 (1949); 2 Harper and James, *Law of Torts*, §17.6 (1956).

as here, the defendant is a private individual in no way part of the liquor industry. To my knowledge, no court has created civil liability with respect to such persons. See Annot., 8 A.L.R. 3d 1412.

I hasten to add that in my view there is no reason in the nature of things why a private person should not be held liable if he serves liquor to one whom he knows or should know to be intoxicated, and who he knows or should know is about to drive an automobile or engage in some other activity involving the potentiality of harm to himself or to others, with resulting damage. No legislative enactment is required to accomplish that result; it is ordinary tort law.[5] The present complaint, however, is not so framed; it is deliberately couched in the statutory language of the Liquor Code without alleging any such scienter on appellee's part. That being so, I think the demurrer to the amended complaint was properly sustained.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I must dissent. The majority establishes a new immunity in tort law previously unheard of in the decisions of this Court. Ironically, the pronouncement of this new immunity takes place at a time when most courts, including this one, have been most diligent in striking down old immunities which deprived citizens of their day in court.

Liquor dispensers who act negligently and cause harm should not be given any special privilege of immunity from liability. We do not give such immunity to automobile drivers. We do not give such immunity to drug dispensers. We do not give such immunity to

---

[5] In such case, it is possible that Section 493 of the Code would be admissible in evidence as bearing on the proper standard of care. See D. Johnson, *Drunken Driving—The Civil Responsibility of the Purveyor of Intoxicating Liquor*, 37 Ind. L.J. 317 (1962).

homeowners. Once there was a special immunity for charities—but no longer. Once there was a special immunity for municipalities—but no longer. Once there was a special immunity for parents—but no longer. The creation of a new class and the establishment of a new immunity makes history—bad history. The combination of an intoxicated person and an automobile causes death and serious harm to many each day. Such victims are entitled to their day in court. That day in court is guaranteed by the declaration of rights in the Pennsylvania Constitution which states that ". . . every man for any injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Pa. Const. art. I, §11.

This case is at an early stage. The appellant has alleged that he was harmed by the negligent conduct of the appellees. He is entitled to an opportunity to prove his allegations according to ancient principles of tort law. We have no right to deprive him of that opportunity.

The trial court erred in reasoning that a trespass action in negligence must state a cause of action *under a statute*. The courts may—or may not—look to a statute for a controlling or guiding standard of due care to be applied in a negligence action. *See* Restatement (Second) of Torts §286 (1965). Indeed, in Pennsylvania, the overwhelming number of trespass actions in negligence are unrelated to any statute.

Simply stated, negligent conduct is the want of due care which a reasonable man would exercise under the circumstances. *Gift v. Palmer*, 392 Pa. 628, 141 A. 2d 408 (1958). *See* Restatement (Second) of Torts §§282-83 (1965). If such negligent conduct is the legal cause of harm, a cause of action is stated. *See* Restatement (Second) of Torts §430 (1965). *See also Whitner v. Lojeski*, 437 Pa. 448, 263 A. 2d 889 (1970); Restate-

ment (Second) of Torts §§431-32 (1965). A demurrer can only be sustained if it is certain that no recovery is permitted. Any doubt must be resolved against sustaining the demurrer. *Clevenstein v. Rizzuto*, 439 Pa. 397, 266 A. 2d 623 (1970). The factual allegations in the complaint must be examined to determine whether reasonable men might infer a lack of due care by the appellees which legally caused harm to the appellant.

It is alleged that the appellees furnished or supplied intoxicating liquors or beverages to Walters and continued to furnish such intoxicating liquors or beverages to Walters when he was in a state of visible intoxication. Might not reasonable men infer that there was a want of due care which the appellees should have exercised under the circumstances? Can we declare as a matter of law that it is reasonable conduct (due care) to serve intoxicating liquors to a person who is in a state of visible intoxication? I think the question answers itself. In acting, a person is assumed to know what the reasonable man in the society knows. Restatement (Second) of Torts, Explanatory Notes §283, comment *b* at 15 (1965). The common knowledge of the reasonable man certainly includes information concerning the effects of alcoholic beverages and the consequences of intoxication on human behavior. From the alleged facts, reasonable men could infer negligent conduct by the appellees.

Even though the complaint is sufficient in that reasonable men might conclude that the appellees engaged in negligent conduct, there is a further inquiry which must be made. Would the facts in the complaint permit reasonable men to infer that the appellees' negligent conduct was the legal cause of harm to the plaintiff. Since the facts alleged obviously permit an inference of causation, the only possible question as to *legal cause* is whether the intervening act of someone, other

than the appellee, can be declared, as a matter of law, to be a superseding cause, relieving the appellee of liability.

It cannot be said that the intervening act of Walters, the alleged intoxicated employee, was, as a matter of law, a superseding cause of appellant's injuries, relieving the appellees of liability even if the appellees' conduct involved a want of due care which caused harm to the appellant. The intervening negligent act of a third person (Walters) is not a superseding cause of harm to another (the appellant) which the actors' (appellees) negligent conduct is a substantial factor in bringing about, if (a) the (appellees) should have realized that (Walters) might so act or (b) (Walters') act was not highly extraordinary, or (c) the act of (Walters) is a normal consequence of a situation created by the actors' (appellees) conduct and the manner in which it is done is not extraordinarily negligent. Restatement (Second) of Torts §447 (1965), see *Whitner v. Lojeski,* 437 Pa. 448, 263 A. 2d 889 (1970). *See also* Restatement (Second) of Torts §§440, 443 (1965).

It cannot be said as a matter of law that the intervening negligent act of an intoxicated person (a) should not have been anticipated, or (b) was so highly extraordinary, or (c) was not a normal consequence of the intoxication allegedly caused by the appellees' conduct. Thus, the complaint cannot be dismissed on the legal cause issue. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A. 2d 623 (1970).

During the trial, of course, the parties will have an opportunity to present a complete detailed picture of all of the circumstances under which the parties allegedly acted. Such details are not required at the complaint stage. The appellant is not required to plead his proof. *Smith v. Allegheny County,* 397 Pa. 404, 155 A. 2d 615 (1959), 3 Standard Pennsylvania Practice 143 (1952).

The Liquor Code aside in this case, I cannot say, as a matter of law, that the complaint fails to state a cause of action. In *Jardine v. Upper Darby Lodge No. 1973, Inc.*, 413 Pa. 626, 631, 198 A. 2d 550, 553 (1964), this Court said: "The first prime requisite to de-intoxicate one who has, because of alcohol, lost control over his reflexes, judgment and sense of responsibility to others, is to stop pouring alcohol into him. This is a duty which *everyone* owes to society and to law entirely apart from any statute." (Emphasis supplied.) Since the complaint in this case alleges facts from which reasonable men might conclude that the appellees' negligent conduct was the legal cause of harm to the appellant, a cause of action is stated.

We look to section 493(1) of the Liquor Code, to consider (1) whether the Code establishes a standard of conduct for persons such as the appellees, and (2) if it does, whether that standard should control on the question of due care in this case.

Section 493(1) of the Liquor Code, *does provide* a standard of conduct for persons such as the appellees in this case. By its very terms, the statute covers unlawful conduct, not only for licensees (including their employees, servants and agents) but also for *any other person*. The meaning of *any other person* was accurately explained in *Commonwealth v. Randall*, 183 Pa. Superior Ct. 603, 615-16, 133 A. 2d 276, 281-82 (1957), *cert. denied*, 355 U.S. 954, 2 L. Ed. 2d 530, 78 S. Ct. 539 (1958):

"Secs. 491, 492 and 493, 47 P.S. §§4-491, 4-492, 4-493, set forth in separate paragraphs the 'Unlawful acts relative to liquor alcohol and liquor licensees' the 'Unlawful acts relative to malt or brewed beverages and licensees,' and the 'Unlawful acts relative to liquor, malt and brewed beverages and licensees.' We deem it noteworthy that the legislature carefully differentiated between 'persons', 'licensees', 'manufacturers', etc., in its

enumeration of prohibited acts. In some instances all 'persons' are prohibited from doing certain things; in other instances the prohibition applies only to licensees of various types or their 'servants, agents or employes' etc. This is a clear indication that the legislature intended that some of the prohibitions were to apply to all persons while others were to apply only to 'licensees', or 'their servants, agents or employes'.

"It is particularly significant that sec. 493 sets forth 25 prohibited acts relative to liquor, malt and brewed beverages, and that the words 'or any other person' are included only in the subparagraph which makes it unlawful to sell, furnish or give any liquor or malt or brewed beverages to minors. It is significant also that minors are not the only class of persons to whom liquor or malt or brewed beverages may not be sold, furnished or given. Visibly intoxicated persons, insane persons, habitual drunkards, and persons of known intemperate habits are similarly protected.

"We think that the legislature in using the words 'or any other person' deliberately selected these words in order to prohibit minors, visibly intoxicated persons, insane persons, habitual drunkards, and persons of known intemperate habits, from obtaining liquor, malt or brewed beverages, whether by purchase or gift, from licensees or any other persons. . . . If we were to restrict this section of the Act to 'licensees' or their 'servants, agents or employes,' we would nullify the very purpose of the Act."

The reasoning of *Randall*, as to the meaning of *any other person* is indisputable. The Liquor Code defines *person* as ". . . a natural person, association or corporation. . . ." Act of April 12, 1951, P. L. 90, art. I, §102, *as amended*, 47 P.S. 1-102. Only by a gross distortion of the meaning of language can we interpret *any other person* to mean *some* but not *all* persons. *"When the words of a statute are clear and free from all ambiguity,*

*the letter of it is not to be disregarded under the pretext of pursuing its spirit."* 1 P.S. §1921(b) (1973) (emphasis supplied). *See Ross v. Ross,* 200 N.W. 2d 149 (Minn. 1972), in which, pursuant to a similar, but not identical Minnesota statute, civil liability was imposed upon persons who were not in the liquor business. The statute in *Ross* referred to any person.

Section 493(1) of the Liquor Code establishes a standard of conduct for *all persons*—which includes the appellees.

The question remains whether that standard should be adopted as the standard of due care in this case.

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results." Restatement (Second) of Torts §286 (1965).

A statute providing for criminal liability but not civil liability leaves a court free to accept or not accept the legislatively established standard of conduct for purposes of a tort action. "[T]he decision to adopt the standard is purely a judicial one, for the court to make. When the court does adopt the legislative standard, it is acting *to further the general purpose which it finds in the legislation. . . ."* Restatement (Second) of Torts, Explanatory Notes §286, comment *d* at 26 (1965). The purpose of the Liquor Code is stated as follows: "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the *public welfare, health, peace and morals of the people of the Commonwealth* and to prohibit forever the open saloon, and

*all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."* Act of April 12, 1951, P. L. 90, art. I, §104(a), 47 P.S. 1-104 (a) (emphasis supplied).

The purposes of the Liquor Code are broadly stated for the protection of the public and in *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A. 2d 550 (1964), this Court specifically held that one of the purposes of section 493(1) of the Liquor Code was to protect the interest of a third party injured as the result of the conduct of an intoxicated person. *See also Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A. 2d 873 (1965). In light of the general purpose of the statutory enactment; the legislative standard of conduct is the standard of conduct required of a reasonable man in a negligence action. Violation of this statute is negligent conduct in itself. *See Smith v. Clark,* 411 Pa. 142, 190 A. 2d 441 (1963); Restatement (Second) of Torts §288B (1965).

Section 493(1) of the Liquor Code does not create the cause of action in this case. The ordinary principles of negligence do that. By section 493(1) of the Liquor Code the legislature has established a standard of reasonable conduct from which no one can deviate without criminal liability. That same standard should apply in negligence.

The trial court expressed concern that there would be a flood of litigation in the courts if it were held that any person (as distinguished from licensees, their employees, servants or agents) could be held responsible for negligent conduct that caused harm to another as the result of furnishing liquor to a visibly intoxicated person. We recently answered that argument in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 595-96, 305 A. 2d 877, 882 (1973), by restating what this Court said on other occasions when faced with the flood of litigation argument.

" 'We obviously do not accept the "too much work to do" rationale. We place the responsibility exactly where it should be: not in denying relief to those who have been injured, *but on* the judicial machinery of the Commonwealth to fulfill its obligation to make itself available to litigants. Who is to say which class of aggrieved plaintiffs should be denied access to our courts because of speculation that the workload will be a burden? Certainly this Court is unwilling to allow such considerations to influence a determination whether a class of litigants will be denied or permitted to seek adjudication of its claims.' (Emphasis in original.) "

The facts alleged in appellant's complaint are sufficient to state a cause of action. The trial court, therefore, erred in dismissing the complaint after sustaining the preliminary objections. The order of the trial court should be reversed and the matter remanded for further proceedings.

Mr. Justice ROBERTS joins in this dissenting opinion.