Stewart E. CARTWRIGHT, Individually
and as Administrator of the Estate of
Marilyn Carroll Cartwright, Plaintiff,

v.

HYATT CORPORATION et
al., Defendants.

Civ. A. No. 77-0618.

United States District Court,
District of Columbia,
Civil Division.

Oct. 30, 1978.

Daniel E. Toomey, Ralph N. Albright, Jr., Washington, D. C., for plaintiff.

R. Harrison Pledger, Jr., Washington, D. C., Patrick J. Attridge, Rockville, Md., for defendants.

OPINION

HAROLD H. GREENE, District Judge.

This is a wrongful death and survival action filed by Stewart Cartwright, individually and as administrator for the estate of Marilyn Cartwright, his daughter. Ms. Cartwright was killed in an automobile accident when the car in which she was a

passenger collided with another automobile owned and operated by defendant Susan Branham. Plaintiff claims that the accident was proximately caused by defendant Branham's negligence in driving while intoxicated, defendant Washington Hotel Corporation's negligence in serving Ms. Branham alcoholic beverages, and defendant Larry Chew's negligence in buying Ms. Branham the beverages in the course of their common employment with defendant Hyatt Corporation.[1] Plaintiff is seeking $1.5 million in compensatory and $1 million in punitive damages. Presently before the Court are the motions of defendants Washington Hotel Corporation, Chew, and Hyatt Corporation for summary judgment. For the reasons stated below, the Court finds that there is no genuine issue of material fact, and that these defendants are therefore entitled to judgment as a matter of law.

The following facts are not in dispute. On April 11, 1976, Susan Branham, employed by the Hyatt Corporation as a cocktail waitress at the Hyatt Regency Hotel in this city, proceeded after work with her immediate supervisor Larry Chew and one Kenneth Ovens, a bartender at the Hyatt, to the Whistlestop Lounge of the Quality Inn across the street.[2] From approximately 8:00 or 8:30 p. m. until approximately 10:30 or 11:00 p. m., Ms. Branham, Mr. Chew, and Mr. Ovens were each served and each consumed alcoholic beverages at the Whistlestop Lounge, although the precise number of drinks they had is in dispute. The drinks were served by one Mildred Young, an employee of the Quality Inn, and for purposes

of this motion the Court will assume that they were paid for by defendant Chew.

Some time after 10:00 p. m., defendant Branham left the others "to meet a girlfriend." At approximately 11:15 p. m., while defendant Branham was travelling south in the northbound lanes of the Southwest Freeway, her car collided head-on with a car driven by one Grant Stockdale and carrying as a passenger plaintiff's decedent Marilyn Cartwright. Ms. Cartwright was pronounced dead on arrival at the George Washington University Hospital that night. The next morning defendant Branham was arrested for driving while under the influence of alcohol, and she subsequently pleaded guilty to negligent homicide (D.C.Code § 40–606) in the Superior Court of the District of Columbia.

■ At the outset, defendants Chew and Hyatt Corporation[3] claim that there is no basis on which to hold them liable, in that Chew, a social host, had no duty to refrain from providing alcoholic drinks to defendant Branham. Indeed, while District of Columbia law imposes such an obligation upon commercial vendors of liquor, in circumstances indicating that a person is intoxicated and reasonably likely to cause harm to others (*Marusa v. District of Columbia*, 157 U.S.App.D.C. 348, 484 F.2d 828 (1973); D.C.Code § 25–121),[4] it has never been held to impose that duty upon social hosts. Plaintiff's argument that this Court should find or create a common law duty, as the California Supreme Court attempted to do in *Coulter v. Superior Court of San Mateo County*, 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978),[5] is not persuasive. Since the California legislature in effect

---

1. The liability of the corporate defendants is predicated on the theory of respondeat superior.

2. The Quality Inn is owned and operated by defendant Washington Hotel Corporation.

3. Hyatt Corporation cannot be held vicariously liable without a finding that Chew is primarily liable.

4. D.C.Code § 25–121 provides that "no person being the holder of [an alcoholic beverage] license . . . shall permit on the licensed premises . . . the consumption of any

beverages by any intoxicated person . . . or any person who appears to be intoxicated."

5. *Coulter* represents the only attempt to fashion such a judicial rule, and it was expressly abrogated by the California legislature less than five months later. See S.B. 1645 (Calif. 1978), "An act to amend § 25602 of the Business and Professions Code and to amend § 1714 of the Civil Code relating to proximate cause." See also S.B. 1175 (Calif.1978), "An act to add §§ 25602.1, 25602.2 and 25602.3 to the Business and Professions Code relating to alcoholic beverages." Even states having Dram Shop Acts have been loath to extend

overruled *Coulter* (see note 5 *supra* ), there is now no jurisdiction in the United States where, absent an explicit Civil Damage or "Dram Shop Act," [6] a social host is held liable for having served liquor to an intoxicated adult who, as a result, causes harm to a third person. Valid policy considerations exist on both sides of this issue,[7] and the Court is not prepared to adopt for the District of Columbia a rule not judicially imposed by any other court in any other jurisdiction.[8] If such a rule is to become a part of District of Columbia law, the decision should appropriately be made by the legislature—as it has been wherever the rule has been adopted. See *Manning v. Andy*, 454 Pa. 237, 310 A.2d 75 (1973); see also, notes 4 and 6, *supra*.

In any event, it is not necessary to rest the decision here solely or even primarily upon the absence in the District of Columbia of a "social host" policy, for there is an alternative basis upon which liability must be denied with respect to all three defendants.

As a licensed tavern owner, defendant Washington Hotel Corporation has of course a clear legal obligation with respect to the service of liquor to intoxicated persons. See *Marusa v. District of Columbia, supra*. But plaintiff must do more than to show the existence of that obligation; they must also show a breach. If, as defendants claim, plaintiff has produced no evidence from which a reasonable juror could conclude that this duty was in fact breached in this instance, then all three defendants [9] are entitled to summary judgment on that basis alone.

■ A breach occurred and liability may be imposed upon defendants only if there is a showing not only that at the time they provided defendant Branham the alcoholic beverages she was intoxicated but also that at that time she appeared to be intoxicated to those serving the drinks. See *Coulter v. Superior Court of San Mateo County, supra; Deeds v. United States*, 306 F.Supp. 348 (D.Mont.1969); *Linn v. Rand*, 140 N.J. Super. 212, 356 A.2d 15, 18 (App.1976); *Brattain v. Herron*, 159 Ind.App. 663, 309 N.E.2d 150, 152 (1974).[10] In this regard, defendants have produced the depositions of defendant Chew, Mr. Ovens, defendant Branham, and Ms. Young—all of whom were present in the cocktail lounge and in a position to observe Ms. Branham during the period in question—and all of them have attested both to Ms. Branham's sobriety and to her lack of any outward manifestations of intoxication. Plaintiff suggests that, since these witnesses are all defend-

---

their reach to social hosts. See, *e. g., Miller v. Owens-Illinois Glass Co.*, 48 Ill.App.2d 412, 199 N.E.2d 300 (1964).

**6.** The District of Columbia has no such act. Compare, *e. g.,* Minn.Stat.Ann. § 340.12(d), 340.73, 340.79, 340.95; Iowa Code Ann. § 192.-2; 1961 Ill.Rev.Stat. ch. 43 § 135. See also *Ross v. Ross*, 294 Minn. 115, 200 N.W.2d 149 (1972).

**7.** The court in *Coulter, supra*, concluded that a social host who serves alcoholic beverages to an obviously intoxicated person knowing that such person intends to drive a motor vehicle assumes a reasonably foreseeable risk of injury to those on the highway, and thus should be held liable under ordinary negligence principles (21 Cal.3d at 150–54, 145 Cal.Rptr. at 537–39, 577 P.2d at 673–5). On the other hand, it was noted in *Miller v. Owens-Illinois Glass Co.*, 48 Ill.App.2d 412, 199 N.E.2d 300, 306 (1964) that to extend the Dram Shop Act rationale to social hosts would have the consequence that "a social drink with your neighbor or friend would become a hazardous act" and it would open the floodgates of litigation. See also, *Ross v. Ross*, 294 Minn. 115, 200 N.W.2d 149, 154 (1972) (concurring opinion).

**8.** Except for the short-lived *Coulter* decision.

**9.** Other than Ms. Branham, the driver of the automobile.

**10.** D.C.Code § 25–121 is a criminal statute and must be read, consistently with due process, to impose liability only upon a bartender who is placed on notice of his patron's condition. Although the *Marusa* court did not address this requirement in the context of an action for civil damages, other courts with occasion to construe similar statutes have read into them an element of notice or knowledge. See, *e. g., Thaut v. Finley*, 50 Mich.App. 611, 213 N.W.2d 820, 822 n. 5 (1973). Similarly, if a duty were to be imposed upon a social host not to serve drinks to intoxicated persons—as in *Coulter* —such a host could not in any event be held liable where a licensed commercial establishment would not be, *i. e.*, where the guest did not also appear to be intoxicated.

ants or employees of defendants, they are "interested" in this proceedings and their testimony is therefore not credible. He points instead to affidavits from persons present at the scene of the accident which demonstrate that defendant Branham appeared obviously intoxicated at 11:15 p. m.[11] The difficulty with the testimony of these witnesses is, however, that they do not support the proposition that Ms. Branham appeared intoxicated to others earlier, when she was still in the lounge, particularly before her last drink was provided. See also, pp. 83–84, infra.

Plaintiff has additionally produced the affidavit of Duane Hines, a chemist with the D.C. Department of Human Resources, who found the presence of .29% alcohol in blood samples taken from defendant Branham at 1:37 a. m. and 2:15 a. m. on the night of the accident, and that of Dr. William Brownlee, deputy medical examiner of the District of Columbia, who testified that, based on Mr. Hines' findings, Ms. Branham's size and weight, his experience with the effects of alcohol and trauma on patients, and the undisputed sequence of events, it is his opinion that Ms. Branham consumed a minimum of 8 ounces (if consumed within one hour prior to the occurrence) and a maximum of 11 ounces (if consumed over a three-hour period) of hard liquor in the lounge. Dr. Brownlee further opined that, assuming her symptoms at 11:15 p. m., were as described in the Stockdale affidavit, "it is probable that the ex-

ternal symptoms existed for a substantial period, and in excess of one-half hour prior to 11:15 p. m." (Brownlee Affidavit, para. 17.) Plaintiff claims that all of these affidavits taken together, at a minimum create a genuine issue as for the jury as to defendant Branham's appearance in the cocktail lounge.

In view of the fact that the accident occurred about 11:15 p. m., and that defendant Branham had been in the cocktail lounge at least as late as 10:00 p. m. and possibly as late as 11:00 p. m., the post-accident observations and findings as to her highly intoxicated state are certainly evidence of her state of intoxication shortly prior to the accident. But they are not evidence that, if she was intoxicated, either Ms. Young,[12] or defendant Chew, or both, were or should have been aware of that fact. The testimony of all of the eyewitnesses, interested though they may be, is to the contrary. The only evidence plaintiff has offered in this regard is Dr. Brownlee's opinion that Ms. Branham's external symptoms, if they existed after the accident, "probably" existed more than one-half hour before the accident. Such a statement, however, invites only conjecture and does not create a genuine issue for trial.[13]

Outward manifestations of intoxication, other than perhaps breath, obviously vary from individual to individual. Further, a person's physical reaction to alcohol may be affected by such conditions as, for example, leaving a heated room for the outside, or

11. Indeed, one witness stated: " . . . though I have seen other persons on previous occasions who were intoxicated, I have rarely seen a person more intoxicated than Ms. Branham. She was lurching, her gait was unsteady, her speech was slurred and ponderous, and her eyes were glazed. She kept repeating herself. . . . " (affidavit of .Grant Stockdale, para. 2.)

12. The Court notes that there is no evidence that Ms. Young had any contact with defendant Branham other than to set a drink in front of her. According to the plaintiff, the drinks were paid for (and apparently ordered) by Chew. If either of these persons was at all in a position closely to observe defendant Branham, it was the latter. But, as explained, supra, Chew had no legal obligation with respect to defendant Branham's consumption of alcohol.

13. Dr. Brownlee, an expert witness without personal knowledge of the facts, can only assist the trier of fact to understand evidence already adduced or to determine a fact already in issue. He cannot create a factual issue where it would otherwise not exist. See Federal Rule of Evidence 702. As one court has stated: "Evidence by positive and direct eye-witness testimony as to the facts must prevail over a theory propounded by experts which is not shown to be beyond dispute and is, therefore, only an opinion as to theoretical possibilities." Liberty Mutual Fire Ins. Co. v. Tidewater Oil Co., 292 F.Supp. 818 (W.D.La.1967) affirmed, 403 F.2d 1023 (5th Cir. 1968). See also In Re Kadliak's Estate, 405 Pa. 238, 174 A.2d 870 (1961).

proceeding to drive an automobile. Even Dr. Brownlee went no further than to speculate that defendant Branham's symptoms "probably" existed in the lounge, and he expressed no opinion as to when they became manifest. In the absence of specific evidence, it is simply not reasonable to deduce from Ms. Branham's condition after the accident not merely that she was intoxicated earlier but further that her intoxication must have been apparent to the host who ordered and the cocktail waitress who served her the last drink.

"It is not enough that plaintiff's counsel can suggest a possibility of negligence . . . As long as the conclusion is a matter of mere speculation, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been satisfied." W. Prosser, *The Law of Torts,* (4th Ed. 1971) § 39, pp. 211–12. Inasmuch as plaintiff cannot meet his burden of proof in this case, there are no genuine issues for trial, and defendants are entitled to judgment as a matter of law. An order will be entered accordingly.